**HUNTER SAVINGS ASSOCIATION, Plaintiff/Appellant,**

v.

**The BAGGOTT LAW OFFICES CO., L.P.A., Defendants/Appellees.**

**Bankruptcy No. C–3–83–265.**

United States District Court, S.D. Ohio, W.D.

Oct. 21, 1983.

---

Donald M. Lerner, Cincinnati, Ohio, John D. Squires, Dayton, Ohio, for plaintiff/appellant.

Horace W. Baggott, Jr., John P. Petzold, Dayton, Ohio, for defendants/appellees.

DECISION AND ENTRY AFFIRMING BANKRUPTCY COURT'S DECISION AND ORDER IN PART AND REMANDING MATTER FOR FURTHER HEARING AND FINDINGS IN CONFORMITY WITH THIS DECISION AND ENTRY; TERMINATION ENTRY

RICE, District Judge.

The present matter is before the Court on an appeal by Hunter Savings Association (Hunter), successor to debtor-in-possession, from a Decision and Order of the Bankruptcy Court granting The Baggott Law Offices (the Baggotts) $13,965.00 in compensation, pursuant to an application for fee allowance, for services rendered on behalf of the debtor-in-possession in the below Chapter 11 proceeding. *In the Matter of Georgetown of Kettering, Ltd.,* 28 B.R. 120 (Bkrtcy.S.D.Ohio 1983). The Court, based upon the reasons and authorities cited below, affirms the Bankruptcy Court's determination that the Baggotts should receive some compensation for the services they rendered on behalf of the Debtor, but finds that the standard applied by the Bankruptcy Court in evaluating the number of hours to be compensated to the Baggotts did not require sufficient particularity in view of the complicated and intertwined proceedings below. The Court finds, therefore, that this matter should be remanded to the Bankruptcy Court for a further hearing and findings in conformity with this Decision and Entry.

I. *Background*

The present controversy between Hunter and the Baggotts arises out of the Chapter 11 proceeding of Georgetown of Kettering, Ltd., (Georgetown), a residential apartment complex. Though a detailed recitation of the Bankruptcy Court's findings of fact is unnecessary to a determination of the present appeal, a general understanding of the complexity of the various proceedings below, as well as the sequence of events leading up to the present appeal, is essential in weighing the equities between Hunter and the Baggotts.

As found by the Bankruptcy Court, Frederick E. Gagel, Steven Williams and H. Garrett Frey formed a number of partnerships for the purpose of acquiring and operating rental properties, of which Georgetown was one. A121. All of these partnerships were "property" of a holding partnership, "G.W.F." In addition to the present Chapter 11 proceeding of Georgetown, G.W.F. and four of the other partnerships are also before the Bankruptcy Court under separate petitions for relief.

As found by the court below,

Nearly all of these various proceedings have prompted a large amount of litigation, including internecine struggles among the partnership interests, vis-a-vis an overwhelming mortgage upon which there was potential personal liability against the individual partners. In the instant proceeding, the parties, along with the mortgagee [Hunter] in Debtor's property, were involved in two such adversarial proceedings.

*Id.*

Throughout the proceedings, Mr. Gagel has appeared in a variety of capacities. For example, he has appeared as a creditor in his role as president of Imperial Management, Inc., the corporation created to maintain and manage the various partnership properties. Mr. Gagel, in his capacity as a partner of G.W.F., also endorsed Debtor's Schedules and endorsed two proposed plans for reorganization as "managing partner of G.W.F. Investment, Ltd."

The Baggotts have represented Mr. Gagel in all of his capacities in the proceedings below. The particular interests being asserted by the Baggotts in the various proceedings have corresponded to the interests of Mr. Gagel at any given time. The Baggotts have represented Mr. Gagel personally, and as the Debtor, as the Debtor-in-Possession, as an equity owner, and as a creditor. Because of the variety of roles into which Mr. Gagel's business involvements

cast him, he was pursuing, concurrently, interests characterized as those of a creditor and those of a debtor or debtor-in-possession. In addition to the Chapter 11 case, the Baggotts represented the various interests of Mr. Gagel in two related adversarial proceedings. The Baggotts are now seeking compensation for services they provided that were beneficial to the interests of Mr. Gagel in his capacity as a partner to Debtor-in-Possession, Georgetown.

In attempting to bring about the successful reorganization of Georgetown, various interested parties, including Mr. Gagel and Hunter, the mortgagee, filed proposed reorganization plans. Eventually it was the plan of Hunter that was able to garner the requisite level of acceptance and was confirmed by the Bankruptcy Court on January 22, 1982. The Hunter plan provided, *inter alia,* that Hunter would pay all Administrative Expenses of the estate, for which the plan allocated $1,000. When the plan was being proposed and considered, the only Administrative Expense known by Hunter to exist were fees and expenses for the attorney for the creditor's committee ($766.13). The record reveals the following events which, transpiring subsequent to the Confirmation, gave rise to the present dispute:

(1) On March 5, 1982, over a month after Confirmation of Hunter's Plan, Baggott Law Offices filed a "Request for Payment" for legal services and expenses in representation of Debtor in Possession in the amount of $22,100.00 (A126–128).

(2) On March 8, 1982, Baggott Law Offices filed a Motion for an Order of Appointment *Nunc Pro Tunc* as of March 3, 1981, to be appointed attorney for Debtor in Possession (A125).

(3) On March 15, 1982, the Bankruptcy Court entered an *ex parte* order of appointment of the Baggotts as general counsel for the Debtor in Possession *Nunc Pro Tunc* as of March 3, 1981. No notice of said order was given to Frey or Hunter (A123), although the certification upon the Order and Request for fees was dated March 8, 1982 (A123, 126).

(4) On March 16, 1982, Frey filed Objection to the Motion to Appoint Baggott as Counsel *Nunc Pro Tunc* (A121) and requested his own attorney be appointed instead (A122). On the same day the Court dismissed Frey's pending complaint to determine the Debtor in Possession as moot (A192).

(5) On June 18, 1982, Hunter filed Objection to the Motion to Appoint Baggott as counsel *Nunc Pro Tunc* (118–119). At the hearing on applications for fees held on June 22, 1982, Hunter contended that it learned for the first time of the *ex parte, Nunc Pro Tunc* order of Appointment and requested the Court to thereafter consider its Objections to the Motion to Appoint on the merits (A107–108).

(6) At the hearing, Baggott was granted ten days to file a memorandum and Hunter was granted ten days to respond (A110). When Baggott failed to file a timely memorandum, Hunter filed a post-hearing memorandum on July 13, 1982, citing among other issues Baggott's complete failure to comply with 11 U.S.C. § 329(a) and Bankruptcy Rules 215 and 219 and local (and interim) Rule 2006 (A46–47).

(7) On July 16, 1982, Baggott filed a post-hearing brief (A44–45). On August 3, 1982, Hunter filed a Supplemental Memorandum in Reply (A41–43).

(8) On January 5, 1983, the Bankruptcy Court noted, on its own action, that Baggott had failed to "completely" comply with 11 U.S.C. § 329(a), Bankruptcy Rules 215, and 219 and interim Bankruptcy Rule 2006 and by *ex parte* order granted Baggott an additional two weeks to comply (A40).

(9) Fourteen days after this order Baggott applied for additional time to comply (A39), which was granted *ex parte* on January 24, 1983 (A38). Also on January 24, 1983 (and almost a year to the day after Confirmation of Hunter's plan), Baggott filed a statement in an effort to comply with Rules 215, 219, etc. (A36–37).

(11) Hunter duly filed its Notice of Appeal on February 28, 1983, and Designation of the Record on March 10, 1983.

## II. *Issues raised by Applicable Statutes and Rules*

Essentially, Hunter objects not only to the entire manner in which the Bankruptcy Court handled the Baggotts' Request for Payment, but also to the fact that the Court ordered that the Baggotts were entitled to *any* compensation.

Specifically, Hunter objects that the Baggotts failed to comply with 11 U.S.C. § 327(a) & (e),[1] 11 U.S.C. § 329(a),[2] Bankruptcy Rules 215[3] and 219[4] and Interim

1. Section 327 ("Employment of professional persons" pertinently provides:

(a) Except as otherwise provided in this section, the trustee, with the court's approval may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

\*   \*   \*   \*   \*   \*

(e) The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

2. Section 329(a) provides:

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of and in connection with the case by such attorney, and the source of such compensation.

3. Bankruptcy Rule 215 provides in pertinent part:

(a) Conditions of Employment of Attorneys and Accountants. No attorney or accountant for the trustee or receiver shall be employed except upon order of the court. The order shall be made only upon application of the trustee or receiver, stating the specific facts showing the necessity for such employment, the name of the attorney or accountant, the reasons for his selection, the professional services he is to render, and to the best of the applicant's knowledge all of the attorney's or accountant's connections with the bankrupt, the creditors or any other party in interest, and their respective attorneys and accountants. If the attorney or accountant represents or holds no interest adverse to the estate in the matters upon which he is to be engaged, and his employment is in the best interest of the estate, the court may authorize his employment. Notwithstanding the foregoing sentence, the court may authorize the employment of an attorney or accountant who has been employed by the bankrupt when such employment is in the best interest of the estate. The employment of any attorney or accountant shall be only for the purposes specified in the order, but the court may authorize a general retainer of an attorney when necessity therefor is shown.

(b) Employment of Attorney or Accountant with Adverse Interest. If without disclosure any attorney or accountant employed by the trustee or receiver shall represent or hold, or shall have presented or held, any interest adverse to the estate in any matter upon which he is so employed, the court may deny the allowance of any compensation to such attorney or accountant, or the reimbursement of his expenses, or both, and may also deny any allowance to the trustee or receiver if it shall appear that he failed to make diligent inquiry into the connection of such attorney or accountant.

(c) Employment by a General Creditor. An attorney or accountant shall not be disqualified to act as attorney or accountant for the trustee or the receiver merely because of his employment by a general creditor in the case.

4. Bankruptcy Rule 219 provides in pertinent part:

(a) Application for Compensation or Reimbursement. A person seeking compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered and expenses incurred, and (2) the amounts requested. An application for compensation shall include a statement by the applicant as to what payments have theretofore been made or promised *to him for services rendered* or to be rendered in any capacity whatsoever in connection with the case, the source of the compensation so paid or promised, whether any compensation he has previously received has been shared and whether an agreement or understanding exists between the applicant and any other person for the sharing of compensation received or to be received for services rendered in or in con-

Rule 2006.[5] Generally, these provisions require that an attorney must obtain prior Court approval, by application of the trustee or debtor-in-possession, before he may represent the debtor in a bankruptcy case. Furthermore, these sections prohibit the attorney from concurrent representation, or the holding of an interest adverse to the estate, and place disclosure and reporting requirements on the attorney as prerequisites to receiving court approval and eventual payment from the estate. Hunter objects that the Baggotts failed to obtain prior court approval before representing the debtor or debtor-in-possession; failed to make the requisite disclosures; in fact represented interests adverse to the estate throughout the proceeding; were primarily concerned with advancing the individual interests of Mr. Gagel; did not object or comment on Hunter's inclusion of only $1,000 for administrative expenses in their proposed Plan; allowed the Plan to proceed through confirmation and then, having failed to comply with any of the requisite provisions in the statute or rules, applied to the court for compensation for services, submitting an itemization that allegedly included items that could not under any circumstances be properly chargeable to the estate.

The Bankruptcy Court, it is argued, improperly permitted, by way of a *nunc pro tunc* order, the Baggotts to file the requisite application and to be appointed general counsel for the debtor after all the proceedings were over, despite the clear mandate of the statute and rules, that prior court approval of appointment is necessary. Moreover, Hunter objects that the court has erred by not requiring timely and strict compliance with the disclosure and reporting requirements of the Bankruptcy Code and Rules.

Hunter also claims that it was entitled to relief from the *ex parte, nunc pro tunc* order appointing the Baggotts as attorneys for the debtor-in-possession under Fed.R. Civ.P. 60(b)(1) and/or 60(b)(6) which provides in pertinent part:

On motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... or (6) any other reason jus-

nection with the case, and the particulars of any such sharing of compensation or agreement or understanding therefor, except that the details of any agreement by the applicant for the sharing of his compensation as a member or regular associate of a firm of lawyers or accountants shall not be required. The requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant even though the application is filed by a creditor or other person on his behalf.

(b) Disclosure of Compensation Paid or Promised to Attorney for Bankrupt. Every attorney for a bankrupt, whether or not he applies for compensation, shall file with the court on or before the first date set for the first meeting of creditors, or at such other time as the court may direct, a statement setting forth the compensation paid or promised him for the services rendered or to be rendered in connection with the case, the source of the compensation so paid or promised, and whether the attorney has shared or agreed to share such compensation with any other person. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of his com-

pensation with a member or regular associate of his law firm shall not be required.

(c) Factors Allowing Compensation.

(1) General. The compensation allowable by the court to a trustee, receiver, marshal, attorney, accountant, or other person entitled to compensation for services rendered in the administration of a bankrupt estate shall be reasonable, and in making allowances the court shall give due consideration to the nature, extent, and value of the services rendered as well as to the conservation of the estate and the interests of creditors.

5. Interim Rule 2006 provides:

An order approving the employment of attorney, accountants, appraisers, auctioneers, agents, or other professional persons pursuant to § 327 or § 1103 of the Bankruptcy Code shall be made only on application of the trustee or committee, stating the specific facts showing the necessity for such employment, the name of the person to be employed, the reasons for his selection, the professional services to be rendered, and to the best of the applicant's knowledge all of such person's connections with the debtor, the creditors, or any other party in interest, and their respective attorneys and accountants.

tifying relief from the operation of the judgment. The motion shall be made within a reasonable time.

## III. *Discussion*

The Court notes at the outset that the present controversy is in large measure capable of being reduced to three overriding issues. The first issue is the appropriateness of the use of a *nunc pro tunc* order by a court to enable an attorney to receive compensation for services provided to the estate of a debtor despite the attorney's failure to obtain the required prior order of retention. The second issue is, if a *nunc pro tunc* order may sometimes be an appropriate device for avoiding complete denial of compensation to an attorney who has benefitted the estate, did the respective equities between the parties in the present case warrant the court's action in allowing Baggotts any compensation. The final issue is, if some compensation was merited, did the court properly determine the amount owing to the Baggotts.

In reviewing an order of the bankruptcy court, findings of fact will not be set aside unless "clearly erroneous" as prescribed by Bankruptcy Rule 810. *See, e.g., In re Meade Land and Development Co., Inc.,* 527 F.2d 280 (3rd Cir.1975); *In re Hammons,* 438 F.Supp. 1143 (S.D.Miss. 1977), reversed on other grounds, 614 F.2d 399 (5th Cir.1980). However, this standard does not apply when determining the propriety of the bankruptcy court's determination of the applicable law or the court's determination of the ultimate legal conclusions resulting from the application of the law to the facts. With respect to these legal issues, the district court engages in an independent examination and makes its own determinations. *Id.*

### a. *The Appropriateness of Employment of the Nunc Pro Tunc Order*

The Court recognizes that there are a number of courts that have adopted an inflexible *per se* rule that denies compensation to an attorney, or to any professional, who performed services for the estate, but failed to obtain prior approval of the court. *See, e.g., Matter of Futuronics Corp.,* 5 B.R. 489 (D.C.S.D.N.Y.1980); *In re Hydrocarbon Chemicals, Inc.,* 411 F.2d 203 (3d Cir.1969), *cert. denied,* 396 U.S. 823, 90 S.Ct. 66, 24 L.Ed.2d 74 (1969); *Matter of Arlan's Department Stores, Inc.,* 615 F.2d 925 (2d Cir. 1979); *In re Paine,* 14 B.R. 272 (D.C.W.D. Mich.1981); *In re Thibodeau,* 20 B.R. 107 (Bkrtcy.Maine, 1982); *In re Mork,* 19 B.R. 947 (Bkrtcy.Minn.1982); *In re Rene Press, Inc.,* 23 B.R. 381 (Bkrtcy.D.Mass.1982). It should be noted, however, that in the majority of decisions rendered on the propriety of utilizing a *nunc pro tunc* order to remedy a professional's failure to obtain prior court approval of his employment for the estate, there has been some other misconduct on the part of the professional that, even with prior approval, would have ultimately precluded his receiving compensation from the estate. *See, e.g., In re Paine,* 14 B.R., *supra* (attorney failed to obtain prior court approval to represent debtor and then tried to conceal from court fact that he was concurrently representing both debtor and her unsecured creditors); *Matter of Futuronics Corp.,* 5 B.R., *supra* (involving failure to obtain prior court approval and proscribed fee splitting arrangement).

More applicable to the present proceeding, and therefore more persuasive, is the line of cases which have found that under the proper circumstances, and with the proper showing, a *nunc pro tunc* order of appointment may be used, "where the sole ground urged for denial of compensation to an attorney who actually performed services of value to the debtor's estate is that the trustee or debtor in possession neglected to secure prior court approval of the employment of such attorney." *Matter of Triangle Chemicals,* 697 F.2d 1280 (5th Cir. 1983). *See also, Matter of Laurent Watch Co.,* 539 F.2d 1231 (9th Cir.1976); *In re King Electric Co.,* 19 B.R. 660 (D.C.N.D.Va. 1982). In these cases, the court, as well as the interested parties, were aware of the role being served by the attorney, the attorney had performed valuable services for the estate and had not engaged in any miscon-

duct, but had failed to obtain a court order prior to performing services.

In view of the equitable nature of the bankruptcy proceeding, this Court finds that it would be inconsistent and unjust to adopt a *per se* rule that failure to obtain prior court approval *always* serves as a bar to compensation of a professional no matter how valuable the services performed, how untainted by misconduct, or how innocent the oversight. The Court concludes, therefore, that under proper circumstances and with a proper showing, a *nunc pro tunc* order may be issued to retroactively approve a professional's appointment. Moreover, the Court finds that the power of the Bankruptcy Court to determine the amount of compensation to be allowed provides adequate safeguard against any risk that the estate be held accountable for services neither necessary nor beneficial. *Accord, Matter of Triangle Chemicals,* 697 F.2d, *supra,* at 1288; *In re King Electric,* 19 B.R., *supra,* at 633.

b. *Did the equities between the parties warrant the Court's action in allowing the Baggotts some compensation?*

■ The Baggotts failed to comply with the requirement that they obtain court approval before rendering services to the debtor or debtor-in-possession. Similarly, they only complied with the disclosure and reporting requirements of the Code and Rules in response to an order by the Bankruptcy Court providing them with additional time within which to respond. However, the Bankruptcy Court was aware from the beginning of the case, as were the other interested parties, that the Baggotts were representing the various interests of Mr. Gagel. Moreover, the Court notes that the application and disclosure provisions of the Bankruptcy Code and Rules are in large measure designed to facilitate judicial oversight of the estate and the compensation to be paid from the estate to professionals. *See, e.g.,* Bankruptcy Rule 219, Advisory Committee Notes; 11 U.S.C. § 329, Notes of Committee on the Judiciary, Senate Report No. 95–989. Therefore, though strict

compliance with the provisions for obtaining professional compensation is always the advised course to follow and should never be knowingly ignored, as long as the course of events has enabled the court to perform its role of judicial oversight in protecting the interests of the estate and creditors, then the purpose to be served by the requirements has in large measure been met.

The Court recognizes that Hunter believes that the Baggotts should not receive compensation because they represented interests "adverse" to the estate, because they were involved in advocating the personal interests of Mr. Gagel, the creditor, and equity interests of Mr. Gagel and the entities he represented, as well as the interests of the debtor Georgetown. The Court finds Hunter's arguments to be without merit. As the Sixth Circuit discussed in *Cle-Ware Industries, Inc. v. Sokolsky,* 493 F.2d 863 (6th Cir.1974), if an individual appears in his capacity as an individual as well as in his capacity as debtor-in-possession, requiring him to obtain separate counsel for each interest he asserts accomplishes nothing but creating the potential for duplication of services and wasting of the assets of the estate. In the present matter, retaining separate counsel for each of the interrelated interests Mr. Gagel represented would have added not only cost, but considerable confusion to the proceedings as well. As noted by the Bankruptcy Court below, in complex matters such as presented in this reorganization case, interests are bound to fluctuate depending upon the stage of the proceeding. Hunter's own rule has shifted from a first mortgagee, secured creditor to successor to debtor-in-possession. Furthermore, as with Mr. Gagel, whatever the role in which Hunter has appeared, Hunter has at least partially been concerned about the advancement of its own interests. The Court, therefore, agrees with the Bankruptcy Court that the unusual factual situation presented in this reorganization, coupled with the role of the Baggotts in openly representing throughout these proceedings the various interests of Mr. Gagel, and the failure of any party to object to their representation of Mr. Gagel

as the Debtor or Debtor-in-Possession, weigh strongly in favor of allowing some compensation to the Baggotts despite their failure to comply in a timely fashion with the requirements of the Code and Rules.

Finally, the Court finds that Hunter has not been prejudiced by the fact that the *nunc pro tunc* orders were issued *ex parte*. Though the issuance of a *nunc pro tunc* order such as that issued herein should be preceded by a hearing in which interested parties may make their objections known, Hunter has had an opportunity to air its objections fully both to the Bankruptcy Court and to this Court. Both courts have considered Hunter's objections and have found them to be unpersuasive. Hearing the arguments prior to issuance of the *nunc pro tunc* order would not have made them more meritorious or persuasive.

The Court finds, therefore, that the Baggotts are entitled to some compensation for the services they rendered on behalf of the debtor, despite their failure to comply with all aspects of the application, disclosure, and reporting requirements of the Code and Rules in a timely fashion.

## C. *The Amount of Compensation*

As noted above, the district court applies the "clearly erroneous" standard only when reviewing the Bankruptcy Court's findings of fact. In determining the amount of compensation properly owing to the Baggotts, however, the Court finds that legal issues are raised for which this Court is bound to make an independent determination. Whether the Bankruptcy Court applied the proper standard in determining the degree of specificity required in the time records of the Baggotts, in order to receive compensation, is a legal question not deserving of the deferential review accorded factual determinations of the Bankruptcy Court. *See, In re Meade Land and Development Co., Inc.,* 527 F.2d 280, 283 (3d Cir.1975).

■ The Court does not disagree, so far as it goes, with the standard set forth in *Matter of Liberal Market,* 24 B.R. 653 (Bkrtcy.S.D.Ohio 1982) and adopted by the Bankruptcy Court below. Clearly, consideration must be given to whether the services were "actually provided and necessary." *Id.* at 658, *citing,* 11 U.S.C. §§ 330 and 503(b)(2); *Matter of Swartout,* 20 B.R. 102 (Bkrtcy.S.D.Ohio 1982). So too must the Court scrutinize the fees charged "to ascertain their reasonableness 'based on the time, the nature, the extent and the value of such services, and the cost of comparable services other than in a case under this title.'" *Matter of Liberal Markets, supra,* at 658, quoting 11 U.S.C. § 330(a)(c). Also appropriate for consideration is the complexity of the litigation and the benefit to the estate and interested parties. *Id.; Matter of Georgetown of Kettering, Ltd.,* 28 B.R., *supra,* at 132.

■ The Court finds, however, that a professional who fails to comply with the requirement of obtaining prior court approval, thereby failing to place the Court and interested parties on notice of his potential claim for compensation for professional services, is under a greater burden to provide accurate and detailed records of his time spent when he later seeks to invoke the equitable powers of the court to rectify his oversight. Even when a prior court approval has been obtained, "any attempt to determine the hours of service expended by counsel should be based upon accurate records of both the amount of time spent and the manner in which it was spent." *In re Doyle-Lunstra Sales Corp.,* 19 B.R. 1003, 1005 (D.C.S.Dakota 1982); *citing, In re Meade Land & Development Co.,* 527 F.2d 280, 283 (3d Cir.1975); *In re Orbit Liquor Store,* 439 F.2d 1351, 1353 (5th Cir.1971). Moreover, "adequate time records are essential to the court in carrying out its duty to determine how much work was productive or necessary, and how much work required treatment by experienced attorneys...." *In the Matter of Interstate Stores, Inc.,* 437 F.Supp. 14, 16 (S.D.N.Y. 1977).

As discussed by the court in *In re Nation/Ruskin, Inc.,* 22 B.R. 207 (Bkrtcy.E.D. Pa.1982),

as a general matter, to allow unsupported entries would be unsound policy. Without detailed fee applications, the Court would be unable to determine reasonable compensation according to the standard set forth in § 330. The allowance of compensation on an hourly scale based on unsupported entries could possibly favor verbose, unprepared, and dilatory attorneys. This Court is not willing to allow this to happen, and emphasizes that it is the attorney's obligation, and not the Court's, to maintain and submit detailed time records supporting an application. *Id.* at 210 (footnotes omitted). The Sixth Circuit has similarly emphasized the importance of detailed time records in *Cle-Ware Industries,* 493 F.2d, *supra,* at 877.

The importance of detailed records is even more important when an attorney or other professional comes into court without having received prior approval and attempts, nonetheless, to argue that its service benefited the estate to such a degree that compensation for those services should come from the estate. Detailed records are especially necessary in proceedings such as the present where the attorneys have represented various interests of an individual only some of which coincided with the interests of the estate.

▇ In the present controversy, the Baggotts failed to provide sufficiently detailed records to enable sure and accurate appraisal of which services should and should not be compensated as an administrative expense. Moreover, the Court finds that the failure of the Baggotts to raise any objection to Hunter's inclusion of only $1,000 in administrative expenses in their plan to have been an oversight, however, innocent or unintentional, that further tips the scales against their receiving full compensation based upon the record before this Court on appeal. The Court therefore remands this matter to the Bankruptcy Court with instructions to allow Hunter a full and fair opportunity to challenge the Baggotts' bill; to direct, in its discretion, the Baggotts to become more specific; and, finally, to make specific findings as to the manner in which Hunter was prejudiced (or not prejudiced) by the Baggotts' untimely filing of its fee application.

On remand, the Bankruptcy Court should also review the calculation of allowable compensation in its February 18, 1983 Decision and Order in this matter. The Court notes that the Bankruptcy Court below found $65.00 per hour to be a just rate of compensation for the Baggotts' services. Though this amount is acceptable, the Bankruptcy Court miscalculated the number of hours it considered as allowable, indicating the total to be 221 hours when in fact it only intended to allow 187 hours. Therefore, the Bankruptcy Court, based on its own determination, should have allowed $12,155.00 instead of $13,965.00. This correction should be made if the Bankruptcy Court chooses to use its initial determination of allowable expenses as a starting point for further inquiry by Hunter and justification by the Baggotts.

*Conclusion*

The Court concludes that adoption of a *per se* rule that categorically denies compensation to an attorney or other professional because of failure to strictly comply with the requirements of the Code and Rules could lead to unnecessarily unjust results. Therefore, the use of a *nunc pro tunc* order to remedy the professional's initial oversight may, in certain limited circumstances, be an appropriate course for the Bankruptcy Court to follow. The Court also finds that the facts in the present matter were sufficient to warrant the issuance of the Bankruptcy Court order challenged herein. The Court, however, finds that the oversight of the Baggotts in complying with the Code and Rules, coupled with their failure to advise Hunter of their intent to seek compensation prior to confirmation of the Hunter plan and their failure to provide sufficiently detailed documentation of their services necessitate that this matter be remanded for an additional hearing and findings in conformity with this Decision and Entry.