In re GUY APPLE MASONRY CONTRACTOR, INC., Debtor.

**Bankruptcy No. B–82–729–PHX–GBN.**

United States Bankruptcy Court,
D. Arizona.

Dec. 14, 1984.

Cathy L. Reece, Phoenix, Ariz., for debtor.

Carolyn S. Short, Phoenix, Ariz., for Bricklayers Trust Fund.

## MEMORANDUM OF DECISION

GEORGE B. NIELSEN, Jr., Bankruptcy Judge.

Before the Court are two fee applications filed by counsel for Guy Apple Masonry Contractor, Inc., debtor in possession herein ("Guy Apple" or "debtor").

Creditor Bricklayers Trust Fund ("Fund") objected that certain itemized services were not performed for the benefit of the estate and the results achieved did not justify the fees requested. 11 U.S.C. § 330(a). The Fund also asserted payment should be deferred until the confirmation of a plan of reorganization as total administrative claims to be paid are, as yet, uncertain. In response, counsel amended the first application to request $27,221.00 in fees and $629.05 in expenses. The second application was reduced to $31,639.00 in requested fees and $681.12 in expenses. These figures were arrived at after consultation with the objecting creditor.

At the initial hearing, the Fund orally asserted compensation should be denied because debtor's counsel was not a disinterested person within the meaning of the Code.[1] 11 U.S.C. § 101(13). The parties were given an opportunity to submit further memoranda. In its opening, the Fund objected to payment of compensation on grounds (1) counsel never obtained a court order authorizing their employment, and (2) counsel has allegedly represented conflicting interests in this proceeding. 11 U.S.C. § 327(a). While the objector has not requested removal of counsel for the debtor, they have urged denial of the fees presently requested and reexamination of the pay-

ment of approximately $50,000.00 in interim compensation previously awarded. 11 U.S.C. § 328(c). Debtor responds the Code does not require Court approval of counsel for a Chapter 11 debtor in possession and denies any conflict of interest. Further, debtor urges entry of an order approving retention of counsel *nunc pro tunc* in the event prior approval is necessary. Objector questions the Court's authority to enter a *nunc pro tunc* order in these circumstances.

Four issues are presented for resolution:

1. Is a Court order approving retention of legal counsel for a Chapter 11 debtor in possession a prerequisite to the allowance of compensation?

2. Does the Court have authority to enter a *nunc pro tunc* order approving retention, and, if so, is such an order appropriate?

3. Assuming a *nunc pro tunc* order may be entered, should counsel's compensation be denied in whole or in part on grounds of conflict of interest?

4. Should payment be deferred until the confirmation of a Chapter 11 plan?

■ Attorneys for a debtor in possession must have an order approving their appointment before they are entitled to receive compensation from the estate. *Matter of Laurent Watch Co.*, 539 F.2d 1231, 1232 (9th Cir.1976); *Matter of Triangle Chemicals*, 697 F.2d 1280 (5th Cir.1983); *In re Wolsky*, 35 B.R. 481 (Bankr.D.N.D. 1983); *In re Mork*, 19 B.R. 947 (Bankr.D. Minn.1982); 11 U.S.C. §§ 327(a), 1107(a).

■ While the debtor in possession has requested in the alternative for appointment *nunc pro tunc*, there is apparently no compliance with Rule 2014(a), F.Bk.R. (1983) (formally Rule 215(a)). That Rule requires an application reflecting the specific facts requiring employment, the name of the person to be employed, reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of

---

1. *Viz,* the Bankruptcy Reform Act of 1978, as     amended, 11 U.S.C. §§ 101, *et seq.*

the applicant's knowledge, *all of the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants.* The Court need not consider the fee applications filed by counsel until this requirement is met. *Wolsky, supra,* 35 B.R., at 382. Failure to disclose the facts giving rise to a conflict of interest may be grounds for denial of compensation wholly apart from the act of representing conflicting interests. *In re Haldeman Pipe & Supply Co.,* 417 F.2d 1302, 1304–05 (9th Cir.1969); *In re Coastal Equities,* 39 B.R. 304, 308 (Bankr.S.D.Cal.1984). Although many factual matters have come to light during this litigation, this does not obviate a formal application for retention under Rule 2014(a). This application must be filed before the Court can finally rule on any request for *nunc pro tunc* approval of employment. It should include an affidavit by debtor's proposed counsel setting forth, in detail, all of the law firm's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants. Because of the particular circumstances of this case, the application should track dealings up to one year prior to filing. This includes revelation of the firm's connections with any person or entity that might be an affiliate of the debtor, whether that affiliate owes money to debtor or is a creditor. 11 U.S.C. § 101(2), (14) and (30). This requirement pertains, of course, to all partners, members, shareholders, and/or associates of the firm. Rule 9001(6) and (9), *F.Bk.R.* The above disclosure requirements are not exclusive; full disclosure of any connection which may have a bearing on the firm's disinterest is required. *In re Coastal Equities, supra,* 39 B.R., at 308.

Rather than await receipt of this formal application, this Court will proceed to rule upon the matters before it to the extent possible. Having decided an order of employment is a prerequisite to awarding compensation, the next question is whether

this Court has power to enter such order *nunc pro tunc.* This is an issue on which the courts are by no means in agreement. *See generally Annot.: Bankruptcy Court Approval of Trustee's Employment of Professional Persons, Under 11 U.S.C. § 327(a),* 66 A.L.R.Fed. 250 (1984). *See also* cases cited in *Matter of Triangle Chemicals, supra,* at 1285–88; *In re First Federal Corp.,* CCH Dec. ¶ 70,102 (Bankr. W.D.Va.1984); *Matter of Bear Lake West,* 32 B.R. 272, 275–78 (Bankr.D.Idaho 1983); *In re Bill & Paul's Sporthaus,* 31 B.R. 345 (Bankr.D.Mich.1983). Some courts have adopted a per se rule against *nunc pro tunc* approval of employment and denied compensation where no previous order approving counsel's employment was obtained. Others have adopted a more flexible approach stating that *nunc pro tunc* orders of employment are appropriate in certain circumstances. The Fund has cited *Matter of Laurent Watch Co., supra,* for the proposition a *nunc pro tunc* order is appropriate only where the record indicates the Court made the determinations required by General Order 44 (now Rule 2014(a) and § 327 of the Code) prior to the time counsel began performing services. This Court does not read *Laurent Watch* so narrowly. There, our Circuit held only that a *nunc pro tunc* order was not forbidden where the record revealed the appropriate determinations had been made prior to the performance of any services for the estate. 539 F.2d, at 1232. The brief opinion does not attempt to discuss or imply whether a *nunc pro tunc* order might be appropriate under other circumstances.[2] *See* the liberal construction of *Laurent Watch Co.* by the Fifth Circuit, *Triangle Chemicals, supra,* at 1286–87 and n. 9, and certain District Courts. *Hunter Savings Association v. Baggott Law Offices Co.,* 34 B.R. 368, 374–75 (S.D.Ohio 1983); *In re King Electric,* 19 B.R. 660, 663 (E.D.Va. 1982). While this Court does not agree with the position taken by the Fund or its

---

**2.** Circuit Judge Sneed, in dissent, argues failure to comply with the plain and unambiguous requirement of prior appointment should not be

relieved by incantation of "nunc pro tunc." 539 F.2d, at 1232–33, *citing, Beecher v. Leavenworth State Bank,* 184 F.2d 498 (9th Cir.1950).

reading of *Laurent Watch,* certainly there is authority to support this position. *In re Mork, supra,* at 949, narrowly construing *Laurent Watch.*

■ While the prophylactic rule, whose purpose is to prevent attorneys from representing conflicting interests, however innocently, and ensure disinterested service to the estate has much appeal—especially where any harshness that might result is due to counsel's failure to perform an unambiguous requirement—its purpose would also seem to be served where the required disclosures have subsequently been made, there is no prejudice to creditors and little chance for overreaching because of the Court's control over the fee allowance. *Matter of Triangle Chemical, supra,* 697 F.2d, at 1288; *Hunter Savings Association, supra,* 34 B.R., at 375; *In re King Electric, supra,* at 633. As long as events enable the Court to perform its function of judicial oversight in protecting the interests of the estate and creditors, the purpose to be served by requiring prior application and disclosure has largely been met. This Court concludes it possesses equitable power to enter a *nunc pro tunc* order of employment in an appropriate case. Since the record does not indicate the Court had determined the requirements for employment were met prior to the performance of services for the estate, *Matter of Laurent Watch, supra,* the debtor in possession must establish that the requirements for approval are met at the present time.

The Fund asserts counsel cannot make the showings required for appointment because counsel has represented conflicting interests throughout these proceedings. Sections 327(a) and 1107(a) of the Code provide the debtor in possession may employ an attorney that does not hold or represent an interest adverse to the estate and who is a disinterested person. Section 101(13) provides a disinterested person is one who:

(A) Is not a creditor, an equity security holder, or an insider;

(B) Is not and was not an investment banker for any outstanding security of the debtor;

(C) Has not been, within three years before the date of the filing of the petition, an investment banker for a security of the debtor, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the debtor;

(D) Is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor or of an investment banker specified in subparagraph (B) or (C) of this paragraph; and

(E) Does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) or this paragraph, or for any other reason.

Although a senior member of the law firm representing both debtor and related entity University Block, Inc. was an officer and director of University Block, there has been no showing such individual is an officer of debtor. Therefore, at present, counsel is not disqualified from representing the debtor under the provisions of § 101(13)(A) or (D) of the Code. Similarly, there is no evidence at this time which would disqualify counsel under § 101(13)(B) or (C). The question therefore becomes whether or not counsel for the debtor has represented or represents an interest that is *materially adverse* to the interests of the estate, creditors, or equity security holders. 11 U.S.C. § 101(13)(E).

The law firm in question represents both University Block, a debtor in Bankruptcy Case No. B–82–730–PHX–GBN, and Guy Apple Masonry Contractor, Inc. The schedules that University Block submitted in its proceeding list the senior firm member as a director and the assistant secretary of the corporation. The Court is informed the officer resigned from these po-

sitions some time during the course of these proceedings. This subsequent resignation does not "cure the default" in determining counsel's eligibility to be appointed or receive compensation. *In re Michigan Interstate Railway*, 32 B.R. 327, 329–30 (Bankr.E.D.Mich.1983). It appears Mr. Guy Apple is the President and sole shareholder of Guy Apple Masonry Contractor, Inc. He is also the President and sole shareholder of University Block, Inc. At the beginning of these proceedings, University Block owed Guy Apple Masonry an unsecured debt of approximately $1.8 million.

Evidence produced at a hearing in regard to the Fund's motion to appoint a trustee indicates Mr. Apple was also an officer, director, or shareholder of various other corporations, including Tri Delta Building Materials Company, Inc., Masa Block Machinery Sales Agency, Inc., Tri Delta Mining and Crushing of Nevada, Inc., Arizona Rhyolite, Inc., J & A Mining, Inc., and D & G Building Materials. Collectively, these entities owe Guy Apple Masonry over $3.1 million. Additionally, Mr. Guy Apple personally owed the debtor over $300,000 at the time of the filing of the petition, but has since repaid that sum. The Fund opines that no efforts have been made to collect these receivables and asserts failure to do so must be due to a conflict of interest created by (1) Mr. Apple's involvement in these other entities, and (2) counsel's prior representation of Mr. Apple in other matters. The Court finds no materially adverse interest on the part of *counsel* in regard to the receivables owed by these other entities. The Trust Fund has not shown that debtor's attorneys represent those other entities in connection with these proceedings.

Counsel's representation of University Block creates a more difficult question. In addition to the large prepetition debt owed to debtor, University Block owes the debtor an undetermined amount for rent incurred as an administrative expense during these proceedings. Although both bankruptcy cases have been pending for nearly two years, creditors only recently learned that

University Block leased its block manufacturing plant from Guy Apple. This information was acquired in connection with Guy Apple's motion to sell assets and University Block's motion to dismiss its Chapter 11 proceedings. Guy Apple's sale application involved the buildings in which the block plant was housed, certain specialized block manufacturing equipment, and miscellaneous other equipment and materials used to manufacture block. At approximately the same time the application for sale was filed, University Block moved to dismiss its voluntary petition. University Block intended to sell certain assets to persons purchasing the block plant and equipment from Guy Apple. Pursuant to the motion to dismiss, University Block made arrangements to pay all creditors in full outside of bankruptcy except Guy Apple. This exception prompted objections to University Block's motion and a motion for appointment of a trustee in the *Guy Apple* case. The sale application was eventually granted. Both University Block's motion to dismiss and the motion for appointment of a trustee were denied. The foregoing raise questions of conflict of interest and the appearance of impropriety.

The Court has reviewed the cases cited in this proceeding and conducted independent research. The law necessary to resolve the current controversy is adequately represented in two cases cited by the parties. The Fund relies on *Matter of Cropper Co.*, 35 B.R. 625 (Bankr.M.D.Ga.1983), in asserting counsel represents materially adverse interests and therefore cannot be appointed to represent the debtor in possession. The debtor in possession relies on *In re OPM Leasing Services*, 16 B.R. 932 (Bankr.S.D.N.Y.1982), to support its position representation is proper.

In *Matter of Cropper Co., supra*, counsel was disqualified for representing interests adverse to the estate. Shortly after filing, debtor's counsel introduced debtor to a former client. As a result, debtor entered into an arrangement whereby goods were sold to the former client on credit. An associate in the firm representing debt-

or owned 38% of the stock of the corporate client with whom debtor had dealt and was also an officer. Although no actual dispute had arisen between debtor and this corporation, the court held the transaction, by its very nature, created an adverse interest. Stating it need not wait for the business transaction to ripen into an actual dispute in order to determine that adverse interests were involved, the court, on its own motion, disqualified counsel, finding a material conflict of interest and an appearance of impropriety. 35 B.R., at 630–31.

In *OPM Leasing, supra*, the trustee and his counsel represented debtors in possession in five separate, but related, Chapter 11 reorganizations. The Chapter 7 trustee in a related case moved to disqualify both the trustee and his attorneys on the grounds of conflict of interest. *OPM Leasing* specifically addressed two questions:

1. Whether the existence of an inter-company claim between a subsidiary and parent corporation as separate reorganization cases, prohibited appointment of the same trustee in both cases or constituted grounds for his removal from one of the appointments, and

2. Where a single trustee is presiding over related corporations in separate reorganizations with potential for recovery of property not clearly earmarked to either estate, is there a conflict that requires separate administration and disqualification of trustee's counsel from representation of either estate in litigation commenced to establish the trustee's ownership. 16 B.R., at 934–41.

Relying on *In re International Oil Co.*, 427 F.2d 186 (2d Cir.1970), the first question was answered in the negative. At least part of the rationale appears to be the feeling the gravity of the conflict did not justify saddling the estates with the expense of separate trustees and counsel. 16 B.R., at 939–40. In addressing the second question, the court noted the estates had an actual unity of interest in recovering the property in question. An actual conflict would arise only in the event the trustee was successful in recovering the property.

The court felt that this conflict, should it arise, might be resolved in a number of ways, including the appointment of special counsel. *Supra*, at 940–41.

The court thus adopted a "wait and see" attitude, recognizing that acting in a preemptive manner could disrupt the orderly administration of the estates involved. *See also Katz v. Kilsheimer*, 327 F.2d 633, 635–36 (2d Cir.1964); *In re General Coffee*, 39 B.R. 7, 8 (Bankr.S.D.Fla.1984). In addition to the possible effect that disqualification would have upon the various estates, the *OPM* case also points out concern with the timing of the application for disqualification. It is clear the court considered the motion for disqualification to be, in part, a tactical device. 16 B.R., at 938–39.

■ It cannot be denied that conflicts of interest exist in the present case. Both the inter-company unsecured and administrative claims create actual conflicts of interest. The tensions created by these conflicts were exacerbated by University Block's motion to dismiss, which proposed payment of all creditors except Guy Apple. Nevertheless, not all conflicts will prevent the appointment of counsel or result in disqualification, once appointed. Conflicts of interest are not void, but voidable, as the facts may warrant. *Matter of Georgetown Kettering, Ltd.*, 28 B.R. 120, 126 (Bankr.S. D.Ohio 1983). For example, the existence of inter-company claims may not warrant the disqualification of trustee or counsel representing related Chapter 11 corporations. *In re OPM Leasing Services, supra*. The question is not whether a conflict exists, but whether that conflict is *materially adverse* to the estate, creditors, or equity security holders. 11 U.S.C. § 101(13)(E).

■ In the context of the present case, counsel's representation of University Block was not so materially adverse as to warrant withholding approval of their appointment as debtor's counsel. Barring any unforeseen revelations in the affidavit to be submitted by the law firm, this Court is inclined to enter a *nunc pro tunc* order

approving their retention as counsel. An overly strict interpretation of the rules regarding employment of counsel may result in the *estate's* loss of the benefits to be obtained by the retention of counsel already familiar with the debtor's affairs. This consideration is even more important where no objection is made until late in the proceedings. This Court heard two prior fee applications without objections. This is not to say the creditors have waived any objections they might have by their prior inactivity. *In re B.E.T. Genetics,* 35 B.R. 269, 273 (Bankr.E.D.Cal.1983). Conflicts of interest must be disclosed and ruled upon. *Id.* The Court simply finds that at this late stage continued representation of the debtor by present counsel would be in the best interests of the estate. The major issues remaining to be resolved relate to the amount and priority of various claims from debtor's attempted rejection of a collective bargaining agreement. Present counsel is intimately familiar with these issues and the background necessary to debtor's effective assertion of its position. It would be both counterproductive and unduly expensive at this point to require new counsel to become familiar with these files. The Court notes the Fund has not moved for disqualification of counsel but has simply urged that compensation be denied.

Furthermore, the Court cannot ignore the timing of the current objections. The objections came shortly before trial was set on the issue of the rejection of the collective bargaining agreement. The Fund is, or was, interested in the outcome of that litigation. As stated earlier, two prior applications were approved without objection. Perhaps if creditors had objected to the prior applications on the grounds no order approving retention of counsel had been entered, the facts evidencing counsel's conflict of interest would have come to light earlier in this proceeding.

The most compelling reason for the Court's decision is the fact debtor has proposed a plan calling for the 100% payment of all creditors. Even at the time of hearing on University Block's motion to dismiss, that entity attempted to justify the propriety of its motion on the grounds the creditors of Guy Apple would be paid 100%. While the debtor's ability to pay creditors in full may be contingent upon the amount of the allowed claims arising from rejection or expiration of the collective bargaining agreement, no one can now say that result is improbable or impossible. Debtor has stated it has a current asset-to-debt ratio of 1.4 to 1 and that Mr. Apple, personally, has committed to supplying at least some of the funds necessary for the plan. It is difficult to see how the estate will have been prejudiced by this conduct if all creditors are paid 100%. This lack of prejudice to the estate, coupled with the ability to solve the conflict by the appointment of special counsel, in addition to the factors cited above, leads to the conclusion a formal order approving retention of counsel for the debtor is not prohibited. The primary factors involved in this determination is the lack of prejudice to the estate if creditors are paid 100% and the ability to cure present conflicts by the appointment of special counsel.

■ The conflict between Guy Apple and University Block regarding debtor's administrative claim may be more apparent than real. The administrative claimant is presumptively entitled to receive the contract rental for the premises as stated by the lease, but the Court may fix a different figure based upon the actual use by debtor or other factors. *In re Peninsula Gunite,* 24 B.R. 593, 595 (9th Cir.B.A.P.1982) (equipment lease).

■ The question of counsel's entitlement to compensation is entirely separate from the issue of the propriety of their retention. The Court has found that actual conflicts exist. This by itself is sufficient grounds for a discretionary denial of fees from the estate. *Woods v. City National Bank & Trust Company of Chicago,* 312 U.S. 262, 268, 61 S.Ct. 493, 497, 85 L.Ed. 820 (1941); *In re Philadelphia Athletic Club,* 38 B.R. 882, 883–84 (Bankr.E.D.Pa. 1984). It is not necessary that any fraud or unfairness be shown:

The Bankruptcy Court need not speculate as to whether the result of the conflict was to delay where speed was essential, to close the record of past transactions where publicity and investigation were needed, to compromise claims by inattention where vigilant assertion was necessary, or otherwise to dilute the undivided loyalty owed to those whom the claimant purported to represent. Where an actual conflict of interest exists, no more need be shown in this type of case to support a denial of compensation. *Woods, supra,* 312 U.S., at 268, 61 S.Ct. at 497.

Real or apparent, the conflict created by debtor's administrative rent claim against University Block is exacerbated by the fact no information respecting the landlord-tenant relationship was revealed until late in these proceedings. Despite the requirement that each debtor file a statement of executory contracts, the Court has been unable to find any such statement reflecting this relationship in either file. Additionally, no information regarding accrual of a post-petition rent claim was mentioned on the financial reports filed by either debtor. Finally, the statement of affairs filed by University Block indicates the landlord is Mr. Guy E. Apple, personally. Were it not for the fact Mr. Apple exhibited uncertainty as to which corporation owned what assets in his testimony, a circumstantial case for intentional misrepresentation could be argued.

Another ground for compensation denial is failure to comply with the disclosure requirements of the Code and rules. *Matter of Haldeman Pipe & Supply Co., supra,* 417 F.2d, at 1304.

■ Violations of Cannon 9 have served as the basis for disqualification of counsel. *In re B.E.T. Genetics, supra,* at 271, *citing, In re Coordinated Pretrial Proceedings, etc.,* 658 F.2d 1355 (9th Cir.1981) and *Trone v. Smith,* 621 F.2d 994 (9th Cir. 1980). A violation of Cannon 9 would also serve as the basis for denial of compensation as well. *In re B.E.T. Genetics,* 35 B.R., at 271, and cases cited. Many cases which address denial of compensation or disqualification on grounds of conflict of interest make at least passing reference to Cannon 9. *See Matter of Cropper Co., supra; In re OPM Leasing, supra; In re B.E.T. Genetics, supra.* In order to find a violation of Cannon 9, the impropriety must be clear and must be one that would be recognized by all reasonable persons. *In re Coordinated Pretrial Proceedings, etc.,* 658 F.2d, at 1360–61. A violation may well have occurred when debtor University Block, with common counsel, urged a motion to dismiss which provided for the payment of all creditors, except Guy Apple. Although University Block justifies that motion on grounds the creditors of Guy Apple would all be paid in full from another source, debtor's ability to fulfil that promise has not yet been demonstrated.

The Court is invested with flexibility in tailoring the necessary relief to correct the situation. *Matter of Ranchero Motor Inn,* 527 F.2d 1044, 1047–48 (9th Cir.1975). At present, the equities call for holding debtor to the promises made in attempting to justify its actions. Counsel for the debtor in possession will be denied all further fees in this case until such time as a plan providing for the payment of 100% of all creditors' claims is confirmed and implemented. It is unlikely the Court will speculate as to how much actual harm was caused to the estate by the conflicting interests in the event all claims are paid less than 100%. *Woods v. City National Bank & Trust Company,* 312 U.S., at 268, 61 S.Ct. at 497.

Nothing should be here construed as questioning the integrity of any counsel. It is evident counsel sincerely believes all creditors can be paid 100% and counsel perceives a unity of interest between University Block and Guy Apple. That unity involved an attempt to sell a block plant as a going concern for the eventual benefit of both estates. The existence of that unity of interest, however, does not obviate the strict disclosure requirements. This opinion shall constitute findings and conclusions pursuant to Bankruptcy Rule 7052.

IT IS ORDERED:

1. Debtor in possession's counsel shall file an affidavit in accordance with Rule 2014(a), *F.Bk.R.*, revealing all connections of any partner, member, shareholder and/or associate with the debtor, creditors or any other party in interest. This affidavit will reveal counsel's connections with any person or entity that might be an affiliate of the debtor and whether such affiliate owes money to debtor or is a creditor. 11 U.S.C. § 101(2), (14) and (30). The affidavit shall be accompanied by an application and order approving counsel's employment *nunc pro tunc*. All such pleadings shall be filed as soon as possible.

2. Upon the receipt of said affidavit and application, this Court will determine whether to enter a *nunc pro tunc* order approving counsel's appointment.

3. The Fund's objections to counsel's application for compensation is sustained in part and denied in part. I find no prohibition to entry of a *nunc pro tunc* order approving employment absent revelation of factors not presently known. *Hunter Savings Association v. Baggott Law Offices Co.*, 34 B.R. 368, 374–77 (S.D.Ohio 1983).

4. Payment of compensation is a separate matter. Regardless of my ruling on appointment, counsel will not receive payment of further interim or final compensation until a plan is confirmed and implemented. Among the factors to be considered in determining the amount of payment, if any, are whether 100% payment to all allowed claims will be achieved. It will be difficult to justify a discretionary award of compensation to counsel from estate monies if less than 100% payment to creditors under the plan is made. *Woods v. City National Bank & Trust Co.*, 312 U.S., at 268, 61 S.Ct. at 497; *In re Philadelphia Athletic Club*, 38 B.R., at 883–84.

5. In regard to the Fund's concerns of prior interim fee awards, that matter can be reurged at a later date, following confirmation and implementation. *In re Callister*, 673 F.2d 305, 307 (10th Cir.1982).