In re **MAHONEY, TROCKI & ASSOCIATES, INC., a California corporation, Debtor.**

**Bankruptcy No. 84–02225–LM11.**

United States Bankruptcy Court, S.D. California.

Nov. 14, 1985.

---

**16.** *In re Robinson,* 49 B.R. 575 (Bkrtcy.W.D.Ky. 1985).

**824**

Darvy Mack Cohan, La Jolla, Cal., Russell M. DePhillips, San Diego, Cal., for Mahoney, Trocki & Assoc., reorganized debtor.

James McCafferty, San Diego, Cal., for Creditors Comm.

Leon Vickman, Encino, Cal., for Richard Donovan.

## MEMORANDUM DECISION

LOUISE DeCARL MALUGEN, Bankruptcy Judge.

Counsel for the debtor Mahoney, Trocki and Associates ("MTA"), seeks an order authorizing employment *nunc pro tunc* and fees. Creditor and successful plan proponent Richard Donovan dba Financial Dynamics ("Dynamics") objects on the grounds that it is not within this Court's power to make a *nunc pro tunc* order authorizing employment of debtor's counsel under the present circumstances.

## SUMMARY OF FACTS

On April 20, 1984, MTA retained Darvy Mack Cohan ("Cohan") as legal counsel. A $25,000 retainer was paid to Cohan by MTA. On the same date, Donnie Lee Mahoney ("Mahoney"), a 50 percent shareholder of the debtor, retained Cohan to defend him individually from anticipated state court actions. Mahoney expected numerous state court civil actions to be commenced against him personally in an attempt to circumvent MTA's bankruptcy proceedings. Cohan and Mahoney anticipated neither the filing of Mahoney's personal bankruptcy proceedings, nor the appearance of Cohan on Mahoney's behalf in this Court. A $10,000 retainer was paid to Cohan by Mahoney for these services. On May 25, 1984, MTA filed for relief under Chapter 11. Although Cohan represented MTA at all stages of these proceedings, he failed to first get this Court's approval to act as attorney for the debtor-in-possession as required by 11 U.S.C. § 327.

On July 12, 1984, creditors of MTA holding Mahoney's personal guarantees filed an involuntary Chapter 7 petition against Mahoney. Due to exigent circumstances, Cohan agreed to represent Mahoney for the limited purpose of consolidating Mahoney's estate with MTA. Cohan required Mahoney to sign a written waiver of any conflict of interest which might result from the joint representation of Mahoney and MTA.

Cohan did three things in connection with Mahoney's representation: First, on August 16, 1984, he filed a Chapter 11 petition on behalf of Mahoney. Then, on October 5, 1984, he filed a motion for consolidation of Mahoney's Chapter 11 proceeding with the pending Chapter 7 petition. Finally, on October 25, 1984, he moved this Court to consolidate the estates of Mahoney and MTA. At the hearing, no objections were raised by Dynamics, the Official Creditors Committee of MTA ("OCC") or any other party in interest, either to the motion to consolidate or to Cohan's dual representation of MTA and Mahoney. However, because of the Court's concern over potential prejudice to MTA's creditors which might result from the consolidation, the motion was denied. At this juncture, Cohan immediately ceased to represent Mahoney and rendered no further aid other than to assist him in obtaining new counsel.

In the latter part of 1984, competing plans of reorganization were submitted by MTA and its creditors. After a heated battle, the creditors' plan submitted by Dynamics was confirmed. This plan provides

100 percent payment to MTA's unsecured creditors. MTA, as reorganized by Dynamics, will pay any attorneys fees awarded Cohan.

In mid-May, 1985, a hearing was held on Cohan's application for compensation as attorney for the debtor-in-possession. Objections to the amount of fees requested were raised both by Dynamics and the OCC, and the Court announced an adjusted award based on consideration of all factors.

After the hearing, but prior to the entry of a written order awarding Cohan his fees and costs, Dynamics and the OCC raised for the first time Cohan's failure to obtain court authorization to act as attorney for the debtor as required by 11 U.S.C. § 327. As it is clear that attorneys must have an order approving their employment as counsel for the debtor-in-possession before they may receive compensation from the estate [1], the entry of the order was suspended pending Cohan's compliance with § 327.

## ISSUES

I. Under what circumstances may the Court enter a *nunc pro tunc* order approving employment of counsel where prior approval has not been sought?

II. Was Cohan's agreement to represent Mahoney in state court actions while representing MTA in reorganization proceedings a violation of 11 U.S.C. § 327?

III. Was Cohan's representation of Mahoney in reorganization proceedings while representing MTA a conflict of interest violative of § 327?

## DISCUSSION

I. UNDER WHAT CIRCUMSTANCES MAY THE COURT ENTER A NUNC PRO TUNC ORDER APPROVING EMPLOYMENT OF COUNSEL WHERE PRIOR APPROVAL HAS NOT BEEN SOUGHT?

Bankruptcy Court approval of the employment of professionals was contemplated to be an act preceding the rendering of services to the estate. The professional who embarks upon representing a trustee or debtor-in-possession without this approval stands in substantial risk of having all services rendered before entry of an order of approval denied compensation.

Some Circuits have adopted a *per se* rule which prohibits any compensation to a professional who has failed to get pre-employment approval. *See, In re Progress Lektro Shave Corp.*, 117 F.2d 602 (2d Cir., 1941); *In re Calpa Products Co.*, 411 F.2d 1373 (3d Cir.1969); *see, also, In re National Tool & Mfg. Co.*, 209 F.2d 256 (3d Cir.1954). The Ninth Circuit Court of Appeals has held that entry of what is called a *"nunc pro tunc"* order is permitted where the Bankruptcy Court, in the exercise of its discretion, determines proper circumstances exist. *In the Matter of Laurent Watch Co., Inc.*, 539 F.2d 1231 (9th Cir.1976). However, the decision in *Laurent Watch* does not give the Bankruptcy Court unfettered license to do away with a clear intent of § 327 that approval of employment of a professional be obtained *prior* to rendering services.

Some bankruptcy courts within the Ninth Circuit have concluded that only in the most extraordinary circumstances should a *nunc pro tunc* order be entered. *See, In the Matter of Bear Lake West, Inc.*, 32 B.R. 272 (Bankr.D.Idaho 1983); *In re New England Fish Co.*, 33 B.R. 413 (Bankr.W. D.WA 1983). At least one court has expressed the frustration felt by many bankruptcy judges confronted with yet another application for *nunc pro tunc* order approving employment where the sole reason for failure to file a timely application was inadvertence or negligence and concluded that utilization of the court's discretion to approve the employment is inappropriate in those cases. *In re Liddell*, 46 B.R. 682 (Bankr.E.D.Cal.1985).

---

**1.** See *Matter of Laurent Watch*, 539 F.2d 1231 (9th Cir., 1976); *Matter of Triangle Chemicals*, 697 F.2d 1280 (5th Cir., 1983); *In re Guy Apple*

*Masonry Contractor, Inc.*, 45 B.R. 160 (Bankr.D. Ariz.1984); *In re Mork*, 19 B.R. 947 (Bankr.D. Minn.1982).

By holding in *Laurent Watch* that the Bankruptcy Court had the discretion to enter *nunc pro tunc* orders approving employment in appropriate circumstances, the Ninth Circuit Court left to the Bankruptcy Court the authority to promulgate standards against which the appropriateness of such an application could be measured. At least one court has established standards for consideration of *nunc pro tunc* applications, which standards should have the effect of restricting the grant of *nunc pro tunc* orders to extraordinary situations. *See In re Twinton Properties Partnership*, 27 B.R. 817, 819 (Bankr.M.D.Tenn. 1983). This Court is persuaded that those standards, with some modification, should be applied to applications for *nunc pro tunc* orders approving employment.

■ Henceforth, all applications for issuance of *nunc pro tunc* orders approving employment must demonstrate by clear and convincing evidence:

1. That there was an express employment agreement between the debtor, the trustee or creditors' committee and the professional person who performed the services;

2. That notice of the application for entry of a *nunc pro tunc* order and opportunity for objection has been provided under Bankruptcy Rule 2002;

3. That the professional presently meets and, at all times during the period for which approval of employment is sought, has met the standards of 11 U.S.C. § 327;

4. That the professional has made the threshhold showing justifying his/her employment as required by Bankruptcy Rule 2014;

5. That the applicant exhibits no pattern of inattention or negligence in soliciting prior judicial approval of his/her employment in cases before this Court;

6. That the applicant's failure to seek pre-employment approval is satisfactorily explained;

7. That neither the estate nor any other party in interest will be actually or potentially prejudiced by entry of the *nunc pro tunc* order; and,

8. That the work performed prior to the *nunc pro tunc* application has been of high quality and performed properly and efficiently (although such determination will have no presumptive effect on the amount of compensation actually awarded when approval of compensation is sought under 11 U.S.C. § 330).

A professional who has failed to make timely application will be required to seek *nunc pro tunc* approval of employment and meet the above-referenced standards. This Court will consider an application for approval of employment to have been timely made whenever the professional has made application within a reasonable period of time after agreeing to render services to a debtor, trustee or creditors' committee, which reasonable time shall, in no event, exceed 30 days from the commencement of employment.

Turning to the application of Mr. Cohan for *nunc pro tunc* approval of his employment by the debtor, the Court finds that the debtor expressly contracted with him to perform the services rendered, that due notice has been given to all creditors and other parties in interest, that his employment by the debtor was necessary, that Mr. Cohan has not exhibited a pattern of negligence in failing to obtain approval of employment, that his failure to seek such approval has been satisfactorily explained and, that the work that he has performed throughout this proceeding was performed efficiently and effectively. However, objections have been filed by Dynamics, claiming that Cohan failed to satisfy the criteria for employment under 11 U.S.C. § 327.

II. WAS COHAN'S AGREEMENT TO REPRESENT MAHONEY IN STATE COURT ACTIONS WHILE REPRESENTING MTA IN REORGANIZATION PROCEEDINGS A VIOLATION OF 11 U.S.C. § 327?

One of the requirements adopted by this Court for *nunc pro tunc* approval is that

the professional presently meets, and at all times for which authorization is sought has met, the criteria of 11 U.S.C. § 327. Dynamics contends that Cohan's joint representation of MTA in reorganization proceeding and Mahoney in state court matters created a conflict of interest which require this Court to deny Cohan's request for *nunc pro tunc* approval of his employment.

There are two standards in § 327 against which the appropriateness of counsel's employment in this case must be tested. First, 11 U.S.C. § 327(a) which provides:

> (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

Additionally, 11 U.S.C. § 327(c) is applicable which section, as amended by Bankruptcy Amendments and Federal Judgeships Act ("BAFJA"), enacted July 10, 1984, now reads:

> (c) In a case under chapter 7 or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor, in which case the court shall disapprove such employment if there is an actual conflict of interest.

Section 327(a) mandates that counsel be "disinterested." As discussed by my colleague Judge James W. Meyers, in *In re Coastal Equities*, 39 B.R. 304 (Bankr.S.D. Cal.1984):

> "Disinterested person" as defined by Section 101(13), is a person that is not a creditor and, among other things, does not have a materially adverse interest to the estate by reason of any direct or indirect relationship to or connection with the debtor. (at p. 308)

Therefore, we are faced with "the question of not whether a conflict exists but whether that conflict is materially adverse to the estate, creditors or equity security holders." *In re Guy Apple*, 45 B.R. 160, 166 (Bankr.D.Ariz.1984).

In discussing his employment of Cohan to represent him in state court matters, Donnie Lee Mahoney states:

> It was my opinion, as well as the opinion of Darvy Mack Cohan and other attorneys which I had previously consulted, that I could expect numerous civil litigations (sic) to be commenced against me personally in the state court in an attempt to circumvent the corporation's bankruptcy proceeding. On said same date, I gave to Darvy Mack Cohan another retainer in the sum of ten thousand dollars ($10,000) specifically to be utilized for fees and costs incurred in the defense of any civil action so filed against me so as to confine litigations (sic) to the reorganization proceeding of the corporation. At such time, it was not contemplated that the retainer so paid would require said attorney to act on my behalf in the bankruptcy court, nor was he obligated to do so. (Declaration of Mahoney, dated June 18, 1985, page 4).

In his role as counsel for Mahoney in state court actions, it was contemplated that Cohan's services were to be limited to thwarting the efforts of MTA's creditors to circumvent MTA's reorganization proceedings by commencing actions against Mahoney personally. In his role as counsel for MTA, Cohan was expected to further the debtor's reorganization. These roles were not necessarily in conflict.

To the contrary, by defending Mahoney's personal estate from dismantling by MTA's creditors in state court proceedings, Cohan's actions actually benefitted MTA by preserving its ability to recover on the substantial claim it held against Mahoney. As observed by the majority in *In re Fondiller*, 15 B.R. 890 (BAP 9th Cir., 1981):

> We interpret that part of § 327(a) which reads that attorneys for the trustee [here, debtor-in-possession] may "not

hold or represent an interest adverse to the estate" to mean that the attorney must not represent an adverse interest relating to the services which are to be performed by that attorney. (at p. 892)

## III. WAS COHAN'S REPRESENTATION OF MAHONEY IN REORGANIZATION PROCEEDINGS WHILE REPRESENTING MTA A CONFLICT OF INTEREST VIOLATIVE OF § 327?

Dynamics suggests that Cohan's undertaking to represent Mahoney in reorganization proceedings while representing MTA, a creditor of Mahoney, violates § 327. As a preliminary matter, it must be stated that § 327(c) is not determinative of this issue. In representing Mahoney, Cohan was not representing a creditor of MTA as contemplated by § 327(c), but rather was representing a *debtor* of MTA. The Court is not considering a request for employment by Cohan in the Mahoney case, which would present a problem squarely within the language of § 327(c). Rather, the question presented by Dynamics' objection is one under § 327(a)—that is, whether Cohan held or represented an interest materially adverse to the estate and was a disinterested person.

At first blush it would appear that Cohan's undertaking to represent Mahoney in reorganization proceedings was in conflict with his duty to the MTA estate. It cannot be denied that had that joint representation continued for any appreciable period of time, an actual conflict would have inevitably arisen.

However, from its position of being able to view the actions of Cohan in hindsight, it appears to the Court that Cohan's actions during the period of joint representation were not materially adverse to the MTA estate, but actually attempted to benefit it. Had Cohan's motion to consolidate the MTA and Mahoney proceedings succeeded, he would have increased the assets of MTA's estate by over $1 million. Once that motion to consolidate was denied, as Mr. Cohan recognized, "... a true conflict existed because Mr. Mahoney was rendered unable to resolve any conflict with the corporation by transfer of his assets...." (Declaration of Darvy Mack Cohan, dated June 17, 1985, p. 3). At that point, Cohan ceased representing Mahoney. Had he not done so, substantially different considerations would be before the Court at this time.

In addition, Dynamics has not alleged nor demonstrated any actual prejudice resulted to MTA by Cohan's joint representation during the approximate two-month period. While the Court should remain vigilant in protecting an estate from the subtly invidious effects of employing professionals who represent conflicting interests, "[t]he influences to be prohibited, nevertheless, are only the harmful influences within the realms of extreme practicality." *In re Georgetown of Kettering Ltd.*, 28 B.R. 120, 126 (Bankr.S.D.Ohio, 1983), *rev'd* other grounds, 750 F.2d 536 (6th Cir., 1984).

Dynamics' opposition to Cohan's employment coming as it does *after* confirmation of a plan providing for a 100 percent payout to creditors impresses this Court as merely an attempt to avoid an administrative expense for which it is now responsible as the reorganized debtor. As stated in the *Georgetown* bankruptcy court decision:

> The integrity of the judicial process dictates that there be no *ex post facto* avoidance of such responsibilities as ... the Debtor in Possession ... since the contribution of officers of the Court reach [sic] to the very heart of the judicial process. *Ibid.*, p. 129.

The Court finds that Cohan's application for entry of a *nunc pro tunc* order approving his employment as counsel for the debtor-in-possession is appropriate and should be granted in this instance. An award of fees and costs having previously been announced in Court, the written order may now be entered.

This Memorandum of Decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. Mr. Cohan shall prepare an order in con-

formance with this Decision no later than ten (10) days of entry hereof.