**In re McKINNEY RANCH ASSOCIATES, Debtor.**

**Bankruptcy No. 85–00239 SB.**

United States Bankruptcy Court, C.D. California.

June 19, 1986.

Marc Zegar of Law Offices of Marc Zegar, Santa Monica, Cal., for debtor.

Richard K. Kudo of Kehr, DeMeter, Factor & Herman, Los Angeles, Cal., for Robert S. Shahin and 218 North Avalon Partnership.

Wayne S. Marshall, Los Angeles, Cal., for Madera Land & Cattle Co., John G. Hocking, II, James M. Lilley, Samuel M. Chen and Raleigh R. Cummings.

Heidi Leanders of Holzwarth, Powell, Stein & Parilla, Newport Beach, Cal., for Daniel Hickey.

Brent Whittlesey, Kimberly Winick, of Jones, Day, Reavis & Pogue, Los Angeles, Cal., for Edith McKinney.

## ORDER APPROVING EMPLOYMENT OF COUNSEL, AND DENYING APPOINTMENT NUNC PRO TUNC

SAMUEL L. BUFFORD, Bankruptcy Judge.

### I. INTRODUCTION

This Chapter 11 bankruptcy case was filed by the debtor in possession McKinney Ranch Associates ("McKinney"), a California limited partnership, on January 4, 1985. On the same day McKinney retained attorney Marc Zegar ("Applicant") to represent it in this case, and paid him a retainer of $2,500. The debtor, however, has made no application to the Court until now to employ Applicant as counsel, even though such application is required by Bankruptcy Code § 327, 11 U.S.C. § 327, and Bankruptcy Rule 2014(a).

Notwithstanding the failure to obtain appointment as counsel, Applicant applied for and was awarded interim fees in the amount of $29,537.50 and costs in the amount of $429.40 by Judge Richard Mednick of this Court on October 22, 1985, and has received $10,000 (in addition to the original retainer), pursuant to this award. Applicant's failure to obtain appointment by the Court was not disclosed in the application for interim compensation, and apparently was not brought to the attention of the Court at that time. In consequence, the Court has issued an order to show cause why the interim compensation order should not be vacated.

Applicant has also made a further application for interim fees in the amount of $70,187.50 and for costs in the amount of $1,236.61. While this application was pending, it came to the Court's attention that Applicant had never been appointed as counsel for the debtor in possession. In consequence, the debtor in possession now seeks an order appointing Applicant *nunc pro tunc*, and for the duration of the case.

### II. DISCUSSION

#### A. *Prior Interim Fee Award*

■ An attorney for a debtor in possession must have an order approving his appointment before he is entitled to receive compensation from the estate. *In re Mahoney, Trocki & Associates,* 54 B.R. 823, 825 (Bankr.S.D.Cal.1985); *In re Guy Apple Masonry,* 45 B.R. 160, 162 (Bankr.D.Ariz.1984).

■ Because Applicant has never been appointed as counsel for the debtor in possession, on these grounds alone the prior interim fee award must be vacated. *Mahoney, supra,* 54 B.R. at 825.

#### B. *Nunc Pro Tunc Order*

■ Section 327 and Bankruptcy Rule 2014(a) require attorneys to obtain the approval of the Court before they commence employment for the estate. *In re Kroeger Properties and Development, Inc.,* 57 B.R. 821, 822 (Bankr. 9th Cir.1986). Rule 2014(a) establishes the procedure for appointment: the trustee (or debtor in possession) must file an application with the Court setting forth the facts demonstrating the necessity for employment, the name of the professional to be employed, why the professional was selected, what services will be rendered, and the connections of the professional with the debtor, creditors, and parties in interest. The purpose of the rule requiring prior court authorization of a professional's employment is to prevent volun-

teerism and to assist the court in controlling administrative expenses. *In re Willamette Timber Systems*, 54 B.R. 485, 488 (Bankr.D.Ore.1985). The rule contemplates the filing of the application for employment prior to the commencement of services to the estate.

■ A *nunc pro tunc* appointment order lies within the sound discretion of the trial court. *Kroeger, supra*, 57 B.R. at 822. A *nunc pro tunc* order should be limited to extraordinary circumstances to deter attorneys from general non-observance of section 327. Otherwise, any attorney serving as counsel for a trustee or debtor·in possession could ignore the requirement that a court order be obtained before commencing work and obviate the judicial determination of an adverse interest. Since professionals are charged with knowledge of the law, there is no unjust hardship in requiring them to observe the requirements of section 327. *Kroeger, supra*, 57 B.R. at 823. Courts have consistently held that attorneys who render services to trustees or debtors in possession without court approval may forfeit their rights to compensation from the estate. *See, e.g., In re Georgetown of Kettering, Ltd.*, 750 F.2d 536, 540–541 (6th Cir.1984); *Kroeger, supra*, 57 B.R. at 823; *In re New England Fish Co.*, 33 B.R. 413, 418 (W.D.Wash.1983).

■ In *Kroeger* the Ninth Circuit Bankruptcy Appellate Panel directed, in determining the propriety of a *nunc pro tunc* application, that the trial court conduct an analysis such as that found in *In re Twinton Properties Partnership*, 27 B.R. 817, 819–820 (Bankr.M.D.Tenn.1983), which requires the applicant to demonstrate each of the following:

1. The debtor expressly contracted with the professional person to perform the services which were thereafter rendered;

2. The party for whom the work was performed approves the entry of the *nunc pro tunc* order;

3. The applicant has provided notice of the application to creditors and parties in interest and has provided an opportunity for filing objections;

4. No creditor or party in interest offers reasonable objection to the entry of the *nunc pro tunc* order;

5. The professional satisfies all the criteria for employment pursuant to Bankruptcy Code § 327 and Bankruptcy Rule 2014(a) at or before the time services were actually commenced, and remained qualified during the period for which services were provided;

6. The work was performed properly, efficiently, and to a high standard of quality;

7. No actual or potential prejudice will inure to the estate or other parties in interest;

8. The applicant's failure to seek pre-employment approval is satisfactorily explained;

9. The applicant exhibits no pattern of inattention or negligence in soliciting judicial approval for the employment of professionals.

*Accord, In re Mahoney, Trocki & Associates*, 54 B.R. 823, 826 (Bankr.S.D.Cal.1985). Applicant must demonstrate that he satisfies each of these conditions by clear and convincing evidence. *Mahoney, supra*, 54 B.R. at 826; *Twinton Properties, supra*, 27 B.R. at 819.

Objections to the *nunc pro tunc* appointment of Applicant arise under five of these standards: Only his qualification under the first, second, third and seventh conditions remains unchallenged.

### 1. *Adverse Interests*

The most important of these standards is the fifth, which requires that Applicant have been qualified for employment pursuant to section 327 during the period for which services were provided. Applicant did not qualify until recently under this standard.

### a. *Statute*

The qualifications for appointment as counsel for the trustee or debtor in possession are set forth in section 327(a), which provides: "[T]he trustee, with the court's approval, may employ one or more attorneys ... that do not hold or represent an

interest adverse to the estate, and that are disinterested persons ..." "Disinterested person" is defined in section 101(13) to include a person that "does not have an interest materially adverse to the interest of the estate ... by reason of any direct or indirect relationship to, connection with, or interest in, the debtor ... or any other reason." 11 U.S.C. § 101(13)(E).

Bankruptcy Code § 328(c), 11 U.S.C. § 328(c), authorizes the Court to deny compensation to any professional person who does not meet the qualification requirements of section 327.

### b. *Ethics Rules*

The analysis of what constitutes an adverse interest and a disinterested person begins with the applicable ethics rules for attorneys. As early as the seventeenth century it was established that an attorney may not represent conflicting interests. *Shire v. King*, Yelverton 32; *Anonymous*, 7 Modern 47. Canon 6 of the Canons of Professional Ethics, adopted by the American Bar Association in 1908, provided:

It is unprofessional to represent conflicting interests, except by express consent of all concerned given after a full disclosure of the facts. Within the meaning of this canon, a lawyer represents conflicting interests when, in behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose.

The Canons of Professional Ethics were superseded in 1969 by the ABA Model Code of Professional Responsibility ("the Model Code"), which provided in DR 5–105(A):

A lawyer shall decline proffered employment if the exercise of his independent professional judgment on behalf of a client will be or is likely to be adversely

affected by the acceptance of the proffered employment, or if it would be likely to involve him in representing differing interests ...

DR 5–105(B) imposed a similar restriction on the continuation of conflicting employment.[1]

The Model Code was superseded, in turn, by the ABA Model Rules of Professional Conduct ("the Model Rules") in 1983. Rule 1.7 of the Model Rules provides:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client ...

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client ...[2]

Of the foregoing formulations, only Canon 6 defines what constitutes the representation of conflicting interests: A lawyer represents conflicting interests if he must contend, on behalf of one client, for that which he must oppose on behalf of another in the same case. This definition was abandoned in the Model Code because it was too narrow, and did not cover the full range of "differing interests." EC 5–14 of the Model Code indicates that "differing interests" may include interests that are "conflicting, inconsistent, diverse, or otherwise discordant."[3] The Model Code left it to case law and ethics opinions to further define the scope of "differing interests."

The Model Rules take a much narrower view of a conflict in interest, limiting it to a representation that is "directly adverse" to another client or that is "materially limited" by the representation of another client.[4] Rule 1.7 focuses on the adverse

---

1. DR 5–105(C) authorized a waiver of conflicts in certain circumstances.

2. The California Rules of Professional Conduct similarly provide, in Rule 5–102(B): "A member of the State Bar shall not represent conflicting interests ..." While the California rule governs the conduct of California lawyers, including counsel before the Court, the meaning of "adverse interest" in section 327 must be deter-

mined by a uniform national standard, and thus is not governed by the California rules.

3. In a footnote to EC 5–14, the ABA Model Code quotes the definition of "conflicting interest" from Canon 6.

4. In Rule 1.8 to 1.13 the Model Rules supplement this general rule with specific rules. None is applicable here, except Rule 1.9, which ap-

effect on the representation, which includes the attorney's loyalty, candor and vigor, and his ability to consider, recommend or carry out a course of conduct on behalf of his client. Proposed Final Draft, Model Rules of Professional Conduct 52 (1981). In substance, the approach of Model Rules is much closer to that of Canon 6 than to the more expansive view of the Model Code.

For the reasons set forth *infra*, the Court finds it unnecessary to determine the exact scope of actual conflicts.

Strong policy reasons lie behind the prohibition of the representation of conflicting interests. Our adversary system of justice depends upon the vigorous representation of the various sides of a controversy, so that a court can make an informed resolution of the dispute. An attorney representing conflicting interests makes himself the arbiter of such conflicts, thereby usurping the role of the judge and the jury. This subverts the system of justice, and prevents it from operating properly.

■ Conflicting interests may arise whenever an attorney represents more than one client in a case or matter. However, the conflict is only potential until the interests actually differ, become adverse or materially limit a lawyer's effective representation of each client. The representation of potentially conflicting interests violates none of the foregoing formulations of the conflicts rule (except the now-superseded Model Code [5], which extended the prohibition to potential conflicts that are "likely" to ripen into actual conflicts). Ethical violations result, in consequence, only from the representation of actual conflicts of interest (or those "likely" to ripen into actual conflicts, in states adopting the Model Code language).[6]

plies to conflicts with former clients, which is discussed *infra*.

**5.** While superseded, the ABA Model Code of Professional Responsibility continues to be the model for state legal ethics rules in approximately three quarters of the states (including California). Approximately eleven states have

The foregoing exposition of the law on the representation of multiple clients with potentially or actually conflicting interests provides the framework for the section 327 prohibition of the employment of professional persons with "adverse interests" or who are not "disinterested persons."

### c. *Bankruptcy Standard*

The bankruptcy disqualification rule is substantially broader than the ethics rule. Section 327 disqualifies counsel for a trustee or a debtor in possession who represents any actual adverse interest. *In re Watson Seafood & Poultry Co.*, 40 B.R. 436, 442 (Bankr.E.D.N.C.1984); *cf. Woods v. City National Bank & Trust*, 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820 (1941) (same rule under Bankruptcy Act). Moreover, it also disqualifies counsel who represents a potential adverse interest in most cases.

■ Strong policy reasons support the prohibition of the simultaneous representation of potential conflicts by counsel for a trustee or a debtor in possession. It is the duty of counsel for the debtor in possession to survey the landscape in search of property of the estate, defenses to claims, preferential transfers, fraudulent conveyances and other causes of action that may yield a recovery to the estate. The jaundiced eye and scowling mien that counsel for the debtor is required to cast upon everyone in sight will likely not fall upon the party with whom he has a potential conflict: Any potential conflict of interest represents a potential to overlook an asset or defense of the estate. Thus a potential conflict of interest, while it may be otherwise ethically proper, is not normally permitted under section 327.

Not all potential conflicts result in disqualification of counsel for a debtor under section 327. Collier states:

adopted ethics rules based upon the ABA Model Rules of Professional Conduct.

**6.** While the potential conflict in interest before the Court may also present the appearance of impropriety, this provides no support for the Court's decision. *See* discussion *infra*.

[The rule] appears broad enough to include anyone who in the slightest degree might have some interest or relationship that would color the independent and impartial attitude required by the Code ... Indirect or remote associations or affiliations, as well as direct, may engender conflicting loyalties.

2 *Collier on Bankruptcy,* ¶ 327.03, pp. 327–19–20 (15th ed. 1986). This formulation is too broad.

■ The policy behind disqualification for representing potentially conflicting interests provides the key to its extent. The jaundiced eye and scowling mien of counsel for the debtor should fall upon all who have done business with the debtor recently enough to be potential targets for the recovery of assets of the estate. The representation of any such party disqualifies counsel from representing a debtor.[7] Any more remote potential conflict should not result in disqualification.

The reported cases are in accord with this rule. In *In re Sambo's Restaurant,* 20 B.R. 295 (Bankr.C.D.Cal.1982), for instance, the Court disqualified, as counsel for the debtor, the law firm that represented the owner of the preferred stock of the debtor and the holder of 80% of the stock of that corporation. In *In re Porter,* 52 B.R. 692, 698 (Bankr.E.D.Va.1985), the Court found a disqualifying potential conflict of interest of special counsel for the trustee, who did not vigorously prosecute a claim that could have resulted in an indem-

nity claim against the attorney's client. Similarly, in *In re 765 Associates,* 14 B.R. 449, 451 (Bankr.D.Ha.1981), the court denied fees to counsel for the debtor in possession who (1) had received compensation from a corporation controlled by a general partner of the debtor (who was also a creditor of the estate), and (2) represented another general partner of the debtor (who was also a creditor of the estate). Numerous other cases consistent with this rule are collected in *In re Roberts,* 46 B.R. 815, 840–843 (Bankr.D.Utah 1985).

### d. *Application to this Case*

■ The foregoing principles determine the outcome of the pending *nunc pro tunc* appointment application. Because of his fiduciary duties, a general partner of a limited partnership will always be a potential target of claims by a limited partnership debtor. A general partner is responsible for the day to day affairs of the business, and makes the policy decisions that lead to the financial problems that result in bankruptcy. This may involve a breach of fiduciary duty or securities law violations. The general partners may have received preferential or fraudulent transfers,[8] or have received property of the estate. In addition, a general partner may have given a guaranty of the partnership debts. Counsel for the debtor will likely be required to examine the relations between the partnership and its general partners for possible claims against them. Thus the potential conflict in the representation of a

---

**7.** This disqualification applies only to general counsel for a debtor. Special counsel, employed for a limited purpose, are subject to the much narrower rule of Bankruptcy Code § 327(e), which permits such representation where the scope of the representation presents no actual conflict. *R. Fondiller v. Robertson (In re H. Fondiller),* 15 B.R. 890, 892 (Bankr. 9th Cir.1981), *appeal dismissed,* 707 F.2d 441 (9th Cir.1982); *Altenberg v. Schiffer (In re Sally Shops),* 50 B.R. 264, 266 (Bankr.E.D.Pa.1985); *In re B.E.T. Genetics, Inc.,* 35 B.R. 269, 272 (Bankr.E.D.Cal.1983).

In addition, there is a much narrower standard for disqualification for an attorney who represents a creditor in a Chapter 7 or Chapter 11 case. Section 327(c) authorizes such an attorney to represent the debtor, unless another

creditor objects, in which case employment must be disapproved if there is an actual conflict of interest.

**8.** Under Bankruptcy Code § 101(28)(C)(i), 11 U.S.C. § 101(28)(C)(i), general partners are included in the definition of "insiders." In consequence, under Bankruptcy Code § 547(b)(4)(B), 11 U.S.C. § 547(b)(4)(B), the debtor in possession may recover a preferential transfer from a general partner that occurred up to one year before the filing of the petition, while recovery is limited to such transfers to others that occurred not more than 90 days before the filing. In addition, the scope of a recoverable fraudulent transfer under section 548, 11 U.S.C. § 548, is much broader against a general partner than against other parties.

general partner of a limited partnership will always disqualify an attorney from simultaneously representing the limited partnership as a debtor in possession or from representing the trustee of a limited partnership.

In his appointment application Applicant discloses that he has represented Stanley Weiner and Ernest Samson, the two general partners of McKinney, on matters relating to the estate, apparently throughout the pendency of this Chapter 11 case. This potential conflict of interest was not disclosed to the Court until it emerged on April 17, 1986 at a hearing on a discovery motion in an adversary proceeding in which Weiner and Samson are parties. Applicant has now substituted out as counsel for the general partners. There is no evidence before the Court that any actual conflict of interest developed from this dual representation.

█ The representation of McKinney's general partners on matters relating to this case is a potential conflict with the estate within the scope of section 327, and disqualified Applicant from appointment as counsel for the debtor until the adverse representation terminated. This ground alone provides a sufficient basis to deny appointment *nunc pro tunc*.

## 2. *Other Grounds*

█ The remaining objections to Applicant's *nunc pro tunc* appointment also provide grounds for its denial.[9] Reasonable objection to the *nunc pro tunc* appointment has been made by Edith McKinney, a creditor of the estate. Applicant has offered no satisfactory explanation for his failure to seek pre-employment appointment by the Court. Furthermore, Applicant has informed the Court that he has generally failed to observe section 327, and

that in fact he has never made an application for appointment under section 327 in this District. Applicant thus exhibits a pattern of inattention or neglect in soliciting judicial approval for the employment of professionals.

In consequence, the *nunc pro tunc* appointment must be denied.

### C. *Prospective Employment*

█ The debtor also moves for Applicant's prospective employment for the remainder of this case. The prior representation of a conflicting interest does not fall within the limitations of section 327. *In re Porter*, 52 B.R. 692, 697 (Bankr.E.D.Va. 1985). Under section 327, it is only the contemporaneous representation of conflicting interests that disqualifies an attorney from representing a trustee or debtor in possession.

█ The ethics rules governing attorney conduct determine the extent of disqualification in the absence of a bankruptcy rule. Opposing parties argue that Applicant's representation of the general partners on matters relating to this case disqualify him from representing the debtor prospectively as well, because he may have received confidential information from the general partners in representing them. Such disqualification is governed by the California ethics standards in this case. Rule 4–101 of the California Rules of Professional Conduct provides:

A member of the State bar shall not accept employment adverse to a ... former client, without the informed and written consent of the ... former client, relating to a matter in reference to which he has obtained confidential information by reason of or in the course of his employment by such ... former client.[10]

---

9. Applicant has not responded to objections to the quality of his work. However, because the Court finds dispositive the other grounds for denial of appointment *nunc pro tunc*, it does not reach this issue.

10. Rule 1.9 of the ABA Model Rules of Professional Conduct similarly provides:

A lawyer who has formerly represented a client in a matter shall not thereafter: (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or (b)

The primary purpose of this rule is to protect confidential communications between attorney and client. *See, e.g., Quaglino v. Quaglino*, 88 Cal.App.3d 542, 549, 152 Cal.Rptr. 47 (2d Dist.1979); *Jacuzzi v. Jacuzzi Bros., Inc.*, 218 Cal.App.2d 24, 28, 32 Cal.Rptr. 188 (1st Dist.1963).

 Disqualification resulting from the representation of a former client arises if the prior representation was "substantially related" to the present representation. *See, e.g., Gas-A-Tron of Arizona v. Union Oil Co. of California*, 534 F.2d 1322, 1325 (9th Cir.1976); *cert. denied*, 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976); *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.*, 518 F.2d 751, 754–756 (2d Cir.1975). The substantial relationship test presumes that confidential disclosures were made in the course of the prior representation, and that such information would be used adversely by the attorney on behalf of the new client. *See, e.g., Silver Chrysler Plymouth, supra*, 518 F.2d at 754. Some courts permit the presumption of confidential disclosures to be rebutted. *See, e.g., Silver Chrysler Plymouth, supra*, at 754. However, no denial of confidential disclosures from McKinney's general partners is offered by Applicant. Applicant's representation of McKinney's general partners in an adversary proceeding in this bankruptcy case was clearly substantially related to this case. Thus, the Court presumes that Applicant received confidential information in representing them, and that the appointment to represent the debtor in possession would violate this rule.

The closest reported case to that before the Court is *In re Philadelphia Athletic Club, Inc.*, 20 B.R. 328 (E.D.Pa.1982), where the district court overruled the appointment, as counsel for the trustee, of a law firm that had previously been counsel for two assumed partners of the debtor partnership. The partners had engaged in vigorous litigation regarding control of the

debtor in possession prior to the appointment of the trustee. In consequence, the court found that the public would believe that the partners would receive preferential treatment from their former attorneys, and that they should not serve as general counsel for the trustee.

The Court declines to apply the *Philadelphia Athletic Club* decision to this case for two reasons. First, in this case it appears that any conflict at the present time between McKinney and its general partners is entirely potential and not actual, whereas *Philadelphia Athletic Club* involved an actual conflict of interest. It appears to the Court that Applicant can adequately represent the debtor in possession in this case, if the general partners give appropriate waivers, and if Applicant terminates any other representation of the general partners.[11]

 Second, the *Philadelphia Athletic Club* decision is based in large part upon the avoidance of the appearance of impropriety, as required by Canon 9 of the ABA Code of Professional Responsibility. This standard does not apply in the Central District of California. The Model Rules have abandoned the "appearance of impropriety" rule as an unworkable standard. The California Rules of Professional Conduct, which govern attorney conduct in California, have never proscribed the appearance of impropriety. Local District Court Rules 2.5.1 and 2.5.2, which apply to the Bankruptcy Court, adopt only the following ethics standards: (1) the State Bar Act, (2) the California Rules of Professional Conduct, (3) court decisions applicable thereto, and (4) a prohibition of conduct degrading or impugning the integrity of the Court or interfering with the administration of justice therein. *Cf. Securities Investor Protection Corporation v. Vigman*, 587 F.Supp. 1358 (C.D.Cal.1984) (applying Rule 1.11 of the Model Rules). Thus the conduct

---

use information relating to the representation to the disadvantage of the former client ...

**11.** It may also be appropriate to appoint special counsel to pursue any claims by the debtor in

possession against the general partners. This subject may be brought before the Court by any party in interest, in due course.

of counsel before this Court is not subject to disapproval on the grounds of the appearance of impropriety.[12]

The safeguards of Rule 4–101 are for the benefit of the former clients, and the rule provides that they may be waived. Any such waiver must be informed, and must be in writing. Accordingly, Applicant may be appointed prospectively as counsel for debtor in possession if he files written waivers of this conflict of interest by McKinney's general partners Ernest Samson and Stanley Weiner.

While other objections have been raised to Applicant's prospective employment by the debtor in possession, the Court is not persuaded of their merit.

## III. CONCLUSION

In conclusion, the Court approves the prospective employment of Marc Zegar as counsel for McKinney, upon the filing with the Court of written waivers by McKinney's general partners Ernest Samson and Stanley Weiner of any conflict of interest, and upon his withdrawal from all representation of these individuals. Applicant's appointment *nunc pro tunc* is denied. The Court's order for interim compensation of October 22, 1985 is vacated, and Applicant is ordered to return to the debtor the $10,-000 and any further compensation that he has received pursuant thereto.

Counsel shall submit an order of employment consistent with this decision.

---

**12.** The decision to the contrary in *In re Petroleum Products Antitrust Litigation,* 658 F.2d 1355, 1360 (9th Cir.1981), *cert. denied, sub·nom. California v. Standard Oil of California,* 455 U.S. 990, 102 S.Ct. 1615, 71 L.Ed.2d 850 (1982), arising out of this district, was based on a prior local rule that is no longer in force. Similarly, *Paul E. Iacono Structural Engineer, Inc. v. Humphrey,* 722 F.2d 435 (9th Cir.1983), *cert. denied,* 464 U.S. 851, 104 S.Ct. 162, 78 L.Ed.2d 148 (1983), which applied the "appearance of impropriety" standard to sustain the disqualification of counsel in a case arising in the Northern District of California (which had not adopted the ABA Model Code), is based upon the now-superseded Model Code and is no longer good law.