**In re GIT–N–GO, INC., Debtor-in-Possession.**

**No. 04–10509–R.**

United States Bankruptcy Court, N.D. Oklahoma.

Feb. 18, 2004.

---

Timothy T. Trump, Andrew R. Turner, Conner & Winters, P.C., Tulsa, OK, for Debtor.

Paul Thomas, Office of U.S. Trustee, Tulsa, OK, for U.S. Trustee.

### ORDER DENYING APPLICATION FOR APPROVAL OF EMPLOY-MENT OF COUNSEL

DANA L. RASURE, Bankruptcy Judge.

Before the Court is the Application for Approval of Employment of Conner & Winters (the "Application") (Doc. 4) and the United States Trustee's Comments Regarding Employment of Conner & Winters as Counsel to the Debtor (the "Comments") (Doc. 57). A hearing on the Application was held on February 12, 2004.

### I. Jurisdiction

The Court has "core" jurisdiction of this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(2)(A).

### II. Findings of fact

The Court finds that notice of the Application and of the hearing was appropriate.

Conner & Winters seeks approval of its employment pursuant to Section 327(a) of the Bankruptcy Code as general bankruptcy counsel for the debtor in possession,

Git–N–Go, Inc. (the "Debtor") to "handle all matters associated with this case." Application at 1. Section 327(a) provides that a trustee, including a debtor in possession may, with the Court's approval, employ one or more attorneys who "do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under [the Bankruptcy Code]." 11 U.S.C. § 327(a).

In compliance with Bankruptcy Rule 2014, Conner & Winters submitted an affidavit disclosing its connections with the Debtor, creditors, other parties in interest, their respective attorneys and accountants, and persons employed by the office of the United States Trustee. The affidavit reveals that Conner & Winters has acted as counsel for Hale–Halsell Company ("Hale–Halsell"), a holding company which owns approximately 87% of the Debtor's stock and which has common officers and directors with the Debtor. In prepetition transactions, the Debtor guaranteed approximately $13 million of debt that Hale–Halsell owes to The F & M Bank and Trust Company ("F & M Bank"), and the Debtor pledged all of its prepetition assets to secure the guarantee. Likewise, Hale–Halsell guaranteed the Debtor's debt to F & M Bank in the amount of approximately $3.2 million. Conner & Winters represented Hale–Halsell and the Debtor in connection with the loan and guarantee transactions with F & M Bank.

The Debtor represents that Hale–Halsell has a claim against the Debtor in the amount of approximately $9 million for the sale of grocery products to the Debtor, $6 million of which is subordinated to F & M Bank's secured claim. Hale–Halsell is also liable as a guarantor with respect to approximately one-half of the Debtor's property leases (some of which the Debtor has sought to reject) and is liable as a guaran-

tor for approximately $2 million of the Debtor's trade debt. Thus, although the Debtor has not yet filed its schedules, it appears that Hale–Halsell constitutes the Debtor's largest unsecured creditor.

Conner & Winters has represented Hale–Halsell for decades, currently represents HaleHalsell generally and intends to continue the representation. Hale–Halsell is itself in financial crisis, its food distribution subsidiary having recently lost its largest customer. Conner & Winters is currently advising Hale–Halsell in connection with selling assets and restructuring its portfolio and anticipates that it will apply for employment as counsel for Hale–Halsell when Hale–Halsell seeks bankruptcy relief in the near future.

Hale–Halsell paid a $100,000 retainer to Conner & Winters to induce Conner & Winters to represent the Debtor in this chapter 11 case and in anticipation of representing Hale–Halsell in its imminent bankruptcy case. Hale–Halsell considers the advance a loan to the Debtor to the extent that the retainer is actually drawn to pay the Debtor's professional fees. Only $839 was drawn from the retainer and loaned to the Debtor prepetition. Conner & Winters advises that it has obtained a letter from Hale–Halsell in which Hale–Halsell disclaims any right to control Conner & Winters' representation of the Debtor by virtue of its advance of the retainer to Conner & Winters.

Testimony in a prior hearing established that the Debtor was compelled to file bankruptcy because hundreds of thousands of dollars of gas sales receipts were withheld by Citgo and set off against debt owed to Citgo by 4 Front Petroleum, Inc., a wholly owned subsidiary of Hale–Halsell ("4 Front"). 4 Front was described as the gas buying arm of Hale–Halsell's family of companies. The Debtor and 4 Front had overlapping officers and employees. 4

Front purchased gas from Citgo and re-sold the gas to the Debtor, who in turn sold the gas on the retail market. Conner & Winters represents that 4 Front owes Citgo approximately $5 million for gas purchases, that 4 Front's only significant asset is its receivable from the Debtor in an equal amount, and that Hale–Halsell has guaranteed 4 Front's debt to Citgo. Conner & Winters does not represent 4 Front, but has represented its parent, Hale–Halsell, and the Debtor with respect to their transactions with 4 Front. Recently, 4 Front ceased selling gas to the Debtor and terminated its operations. Currently 4 Front has no employees.

The Debtor contends that Citgo has continued to withhold and set off the Debtor's gas sales receipts postpetition, notwithstanding the automatic stay. In its affidavit, Conner & Winters disclosed that it represents Citgo in connection with matters unrelated to the Debtor. Fees from Citgo represented approximately 1% of Conner & Winters' revenues in 2003. Although Conner & Winters has obtained a written conflict waiver from Citgo, Conner & Winters refrained from actively contesting Citgo's seizure of the Debtor's gas receipts, and instead recommended that the Debtor retain other counsel to challenge Citgo's actions. On February 4, 2004, five days after the filing of bankruptcy, the Debtor submitted an application requesting the Court to approve the employment of James Tilly to represent the Debtor in connection with the Citgo matter and in other matters on which Conner & Winters may have a conflict with an existing client. The Court approved Mr. Tilly's retention in order that the matter of Citgo's setoff and potential violation of the stay could be brought expeditiously before the Court.

Conner & Winters also disclosed its unrelated representation of three other unse-cured creditors: Great Plains Coca Cola, LDF Food Group, and Southwestern Bell.

## III. Conclusions of law

 Section 327(a) provides that a trustee, including a debtor in possession may, with the Court's approval, employ one or more attorneys who "do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under [the Bankruptcy Code]." 11 U.S.C. § 327(a). A "disinterested person" is one that "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, ... or for any other reason." 11 U.S.C. § 101(14)(E). In determining whether a professional has or represents an "adverse interest," one court observed: "[I]f it is plausible that the representation of another interest may cause the debtor's attorneys to act any differently than they would without that other representation, then they have a conflict and an interest adverse to the estate." *In re The Leslie Fay Cos.*, 175 B.R. 525, 533 (Bankr.S.D.N.Y. 1994). An actual conflict exists if there is "an active competition between two interests, in which one interest can only be served at the expense of the other." *In re BH & P, Inc.*, 103 B.R. 556, 563 (Bankr. D.N.J.1989), *aff'd* in pertinent part, 119 B.R. 35 (D.N.J.1990). "As a general principle, professional persons employed by the trustee should be free of any conflicting interest which might, in the view of the trustee or the bankruptcy court, affect the performance of their services or which might impair the high degree of impartiality and detached judgment expected of them during the administration of a case." *In re Amdura Corp.*, 121 B.R. 862, 865

(Bankr.D.Colo.1990), *quoting* Collier on Bankruptcy ¶ 327.03 (1985).

In his Comments, Paul Thomas, on behalf of the United States Trustee, argues that Conner & Winters' procurement of conflicts waivers from clients who are creditors does not necessarily neutralize the potential for adversity of interests between Conner & Winters' clients and the estate for the purpose of determining whether Conner & Winters may be employed by the estate. Mr. Thomas also expressed concern that the payment of Conner & Winters' fees by Hale–Halsell could contribute to the perception, if not the actuality, that Conner & Winters might be influenced by these purse–strings to favor Hale–Halsell over other creditors of the estate. Mr. Thomas advocated for further disclosure and development of the facts in order to evaluate the potential for adversity between the interests of the Debtor and those of Hale–Halsell.

 The Court has an independent duty to inquire into the qualifications of counsel for debtor in possession under § 327(a). The case of *Interwest Business Equipment, Inc.* established the policy in this circuit underlying the rule that counsel to a debtor in possession not represent any interest adverse to the estate. The Tenth Circuit noted—

> It is the duty of counsel for the debtor in possession to survey the landscape in search of property of the estate, defenses to claims, preferential transfers, fraudulent conveyances and other causes of action that may yield a recovery to the estate. The jaundiced eye and scowling mien that counsel for the debtor is required to cast upon everyone in sight will likely not fall upon the party with whom he has a potential conflict.... The policy behind disqualification for representing potentially conflicting interests provides the key to its

> extent. The jaundiced eye and scowling mien of counsel for the debtor should fall upon all who have done business with the debtor recently enough to be potential targets for the recovery of assets of the estate. The representation of any such party disqualifies counsel from representing the debtor. Any more remote potential conflict should not result in disqualification.

*Interwest Business Equipment, Inc. v. United States Trustee (In re Interwest Business Equipment, Inc.)*, 23 F.3d 311, 316 (10th Cir.1994), *quoting In re McKinney Ranch Assoc.*, 62 B.R. 249, 254–55 (Bankr.C.D.Cal.1986). The review of recent transactions with insiders must be particularly acute. *Id.* at 317–18. In *Interwest*, the Tenth Circuit Court of Appeals affirmed the conclusion of the bankruptcy court that in that case, "it would be an impossible task for applicants to undertake ... multiple representation [of related debtors in possession] and make decisions for one of these debtors which would not be at the expense of another." *Id.* at 318.

At this early stage in the case, it already appears it will be essential for the debtor in possession and its counsel to scrutinize the interrelationship of and recent transactions between the Debtor, Hale–Halsell, F & M Bank, 4 Front and Citgo to the fulfill their fiduciary duties. Unfortunately, Conner & Winters not only maintains an attorney/client relationship with many of these parties, but having counseled some of the parties in the very transactions that deserve examination, Conner & Winters cannot provide the objective and independent advice regarding the validity or propriety of these transactions as is required for the Debtor's performance of its fiduciary obligations. Already, Conner & Winters has recused itself from advising the Debtor with respect to the dispute that

resulted in Citgo's seizure of hundreds of thousands of dollars that would otherwise be available to the Debtor for postpetition operations; the loss of availability of those receipts has caused the Debtor to borrow funds from F & M Bank at 9% interest in order to fund the Debtor's operations.

Further, as counsel for Hale–Halsell, Conner & Winters cannot effectively object on behalf of the estate to the validity or priority of Hale–Halsell's $9 million claim, recharacterize the claim as a contribution of capital rather than a loan, or seek to subordinate Hale–Halsell's claim, all issues that could have a significant impact on the claims of unrelated unsecured creditors of the estate. In addition, a dispute could arise between the estate and Hale–Halsell regarding the characterization and use of the $100,000 retainer paid to Conner & Winters by Hale–Halsell. Moreover, the fact that Hale–Halsell has guaranteed payment of some, but not all, of the Debtor's leases creates an actual conflict between the interests of the Debtor and Hale–Halsell in determining which leases the Debtor should seek to assume or reject. By assisting the Debtor in rejecting leases guaranteed by HaleHalsell, Conner & Winters must act adversely to Hale–Halsell's interest in avoiding liability on the lease guarantees. On the other hand, Conner & Winters' loyalty to Hale–Halsell could influence it (wittingly or unwittingly) to advise the Debtor to reject only the leases Hale–Halsell has not guaranteed, which may not be in the best interests of the Debtor or the estate.

■ Conner & Winters has taken steps in an attempt to mitigate the consequences of its manifest conflicting loyalties. It has obtained conflict waivers from the Debtor and Hale–Halsell. Conner & Winters concedes, however, that the Debtor, as a fiduciary, may not waive conflicts on behalf of the estate. *See, e.g., In re*

*Envirodyne Industries, Inc.*, 150 B.R. 1008, 1016, 1018 (Bankr.N.D.Ill.1993); *In re Amdura Corp.*, 121 B.R. 862, 866 (Bankr.D.Colo.1990) ("what may be acceptable in a commercial setting, where all of the entities are solvent and creditors are being paid, is not acceptable when those entities are insolvent and there are concerns about intercompany transfers and the preference of one entity and its creditors at, perhaps, the expense of another."). The Court understands that in soliciting written conflicts waivers from its clients, Conner & Winters intended only to conform to the rules of professional conduct, not to cure the adverse interests that are peculiar to bankruptcy. In any event, there is no evidence that the Debtor received independent advice concerning the ramifications of its conflict waiver in light of its fiduciary duties. Thus, the Court finds that the written conflict waivers, while necessary in order to satisfy the rules of professional conduct, do not aid the cause of eliminating the adversity of interests between Hale–Halsell and the estate.

■ Conner & Winters contends that the appointment of a creditors' committee will insure that transactions between the Debtor and Hale–Halsell will be adequately scrutinized. No committee has been appointed to date, and while a creditors' committee may be motivated to dissect and perhaps challenge intercompany transactions between and among the Debtor, Hale–Halsell and 4 Front, and may be eager to find a flaw in F & M Bank's secured status, these are among the primary duties assigned to the debtor in possession, and they cannot simply be delegated to a creditors' committee when the debtor's counsel is unavailable because representation of the estate would implicate an adverse interest. Even if the Bankruptcy Code permitted a creditors' committee to substitute for conflicted

counsel to the debtor in possession, issues of standing and potential duplication of efforts and expense to the estate would counsel against reliance upon the creditors' committee to perform the duties of the debtor in possession and its counsel.

■ Conner & Winters seeks refuge from disqualification in Section 327(c) of the Bankruptcy Code, which provides that—

> a person is not disqualified for employment ... solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

11 U.S.C. § 327(c). Unfortunately, Section 327(c) is not applicable in this case, because Conner & Winters' disinterestedness does not arise *solely* because it represents a creditor in an unrelated matter. Hale–Halsell is not just a creditor of the Debtor but is also a co-debtor on certain debt and the Debtor's majority shareholder. *See, e.g., Envirodyne Industries, Inc.,* 150 B.R. at 1016 (Section 327(c) not applicable where counsel represented creditor who was also shareholder). The Debtor's relationship with Hale–Halsell permeates almost every aspect of this case. Even if Conner & Winters does not represent Hale–Halsell with respect to its claims against the Debtor in this case, the Court foresees issues of characterization of debt and equity, of allocation of resources, of the validity and sufficiency of consideration for guarantees, of liability arising from the rejection of guaranteed leases, all of which create an atmosphere in which it is plausible that Conner & Winters' continued representation of its long standing client, Hale–Halsell, with the attendant duty of loyalty to Hale–Halsell's interests, will color and influence, and materially limit, the advice rendered *to the Debtor* for

the benefit of the estate. *See, e.g., In re Star Broadcasting, Inc.,* 81 B.R. 835 (Bankr.D.N.J.1988).

In addition, Conner & Winters cannot perform an unbiased, fresh review of transactions between the Debtor and Hale–Halsell, and among the Debtor, Hale–Halsell and F & M Bank in which Conner & Winters advised the parties. *See, e.g., Envirodyne Industries, Inc.,* 150 B.R. at 1019 (counsel's representation that it believed that investigation and challenge of LBO in which it represented a party was a "remote contingency" indicated that counsel had prejudged the validity of the transaction and was not disinterested). Conner & Winters already formed a belief prepetition, which it has carried into its postpetition representation, that the transactions between the Debtor, Hale–Halsell and F & M Bank are valid, non-preferential, and in F & M Bank's case, properly perfected.

■ Moreover, the fact that Conner & Winters is unable or unwilling to represent the Debtor in its dispute with Citgo also creates an actual disqualifying conflict of interest. In recognition of its conflict in the Citgo matter, Conner & Winters advised the Debtor to obtain "conflicts counsel" to provide independent advice to the Debtor in connection with all creditors and other parties in interest represented by Conner & Winters that are adverse to the estate. The Court finds that it is not appropriate or in the best interests of the estate to allocate to what might otherwise be "special counsel" under Section 327(e) the duties described in Section 327(a)— that is, "to represent or assist the trustee in carrying out the trustee's duties under this title." *See, e.g., Envirodyne Industries, Inc.,* 150 B.R. at 1014 n. 7 ("it is inappropriate for counsel to seek to be generally retained by a client when counsel is aware at the start of its representation that it cannot fully represent that

client"). It was not the Court's intention that Mr. Tilly's employment be deemed a cure for Conner & Winters' conflict with Citgo or with other creditors and parties in interest. Rather, the Court approved Mr. Tilly's employment as a stopgap measure implemented to insure that immediate attention was given to Citgo's continuing seizure of the Debtor's credit card receipts, attention which Conner & Winters was unable and unwilling to provide because of its pre-existing relationship with Citgo. It appears that the bulk of the issues that Conner & Winters seeks to carve out of its representation and delegate to Mr. Tilly are core bankruptcy matters that require considerable chapter 11 experience and expertise.[1] The Court will revisit the necessity of Mr. Tilly's employment once the Debtor has acquired and obtained approval of disinterested general bankruptcy counsel.

While disqualification of the Debtor's preferred counsel is a harsh result, one the Court does not take lightly, the alternative is less appealing. The Bankruptcy Code provides that the Court may deny approval of compensation to the Debtor's professionals "if, at any time during such professional's employment under section 327 . . ., such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed." 11 U.S.C. § 328(c). In light of the activity in this case and the amount of anticipated fees, the Court desires to avoid the possibility that counsel will not be paid for future work and to avoid the disruption and waste of resources that a later disqual-

ification of counsel will cause. As Mr. Thomas stated in his closing argument, while the adversity between the Debtor and Hale–Halsell may not have fully ripened, the landscape resembles a minefield and the inevitable filing of bankruptcy by Hale–Halsell will create dueling fiduciaries and estates, in which counsel's advice to one fiduciary and estate will necessarily be at the expense of the other.

The Court appreciates Conner & Winters' forthright disclosures and willingness to accommodate the concerns of the Court, the United States Trustee and parties in interest. There is no question that Conner & Winters sits in the unique position of possessing a wealth of knowledge about the Debtor, its financial condition, its business and its recent history, which will be impossible to fully replicate by substitute counsel. Additionally, the Court has no doubt about the experience and competence of counsel, or about counsel's good faith and honest desire to assist the Debtor toward a successful reorganization. Notwithstanding the advantages that Conner & Winters' representation could offer to the estate, the Court concludes that Conner & Winters' representation of interests adverse and potentially adverse to the estate preclude its employment as counsel for debtor in possession under Section 327(a).

## IV. Conclusion

For the reasons stated herein, the Application is **denied.**

---

1. At the hearing, Conner & Winters acknowledged that it would be ethically incapacitated to represent the Debtor if the following issues arise in this case: equitable subordination of Hale–Halsell's claim; disputes concerning the ownership or application of the retainer; and a dispute regarding the amount or characterization of Hale–Halsell's claim. In addition, Conner & Winters admits that it cannot advise Hale–Halsell with respect to its claim against the Debtor.